## FRIEND et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6636.

Circuit Court of Appeals, Seventh Circuit.
Feb. 27, 1939.

Rehearing Denied March 31, 1939.

Thomas H. Fisher, of Chicago, Ill., for petitioners.

Robert N. Anderson, James W. Morris, Sewall Key, and L. W. Post, all of Washington, D. C. (Thomas H. Fisher, of Chicago, Ill., of counsel), for respondent.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals affirming a deficiency of the income tax of Henry Friend for the calendar year ending in 1928 under the Revenue Act of 1928, 45 Stat. 791. The petitioner died during the pendency of the cause before the Board of Tax Appeals and his executors were substituted as petitioners.

The petitioners challenge the correctness of the findings as to the fair market value of certain leaseholds acquired in 1907 and 1915, respectively.

The pertinent facts are as follows: On January 6, 1907, the decedent acquired for his business purposes a leasehold on Lot 33, in Block 142 in School Section Addition to Chicago on the west side of State Street between Madison and Monroe Streets in Chicago, at a cost of $100,000 cash. On April 26, 1907, he acquired a leasehold on Lot 3 in the same block at a cost of $81,800 cash. On July 1, 1915, he exchanged on an even basis his leasehold in Lot 3 for a similar leasehold on Lot 34, which adjoined Lot 33. There was no other consideration for the exchange.

Block 142, in which the lots are located, is owned by the Board of Education of Chicago. The original leases were executed by the School Board in 1880 and extended for a period of 50 years. They contained provisions for rentals based on a valuation which was to be revised each five years. In 1885 differences arose between the lessees and the lessor, litigation resulted, and, in settlement of the litigation, new provisions were added to the old lease and other provisions were supplemented. The leases, as amended, extended the terms to 1985. They provided for an annual rental of 6% of the value of the fee, exclusive of improvements. The value of the fee was to be determined at 10-year intervals, and the rental thus determined was to continue for ten years to the next valuation. The lessees were required to pay taxes on the buildings and improvements, but, due to the fact that the fee was owned by the School Board, no general taxes were assessable against the fee.

On December 9, 1935, the Board of Tax Appeals stated that, after considering the voluminous and highly conflicting testimony of expert witnesses respecting the value of the leaseholds, they had reached the conclusion that the fair market value of the leaseholds, exclusive of improvements, on March 1, 1913 was $490,000, and that since this value was greater than cost it was the basis for computing the gain from the sale in the taxable year.

On February 3, 1936, in a supplemental opinion, the Board said:

"That decedent acquired the leasehold covering Lot 34 on July 1, 1915. On this same day, the leasehold was sold to decedent's vendor for $75,000, payable $20,000 in cash and $55,000, in installment notes extending to July 1, 1925, bearing 5% interest. The sale was a bona fide arms-length transaction. The seller decided to change his business location and the lease was sold through a real estate broker after having been placed in the hands of several brokers. Efforts had been made to sell the lease for approximately a year prior to the sale, without success. * * * This sale is the best evidence of the fair market value of the leasehold in Lot 34, and since that leasehold was exchanged on an even basis on the same day for decedent's leasehold in Lot 3, and the leaseholds in Lots 3 and 34 had the same value, the cost to the decedent of the leasehold then acquired in Lot 34 was $75,000, * * * this is the basis for computing gain derived from the sale in 1928.

"* * * The value of the leaseholds in Lots 3, 33 and 34 was the same in 1915 as at March 1, 1913, and the value of the leasehold in Lot 33 was therefore $75,000. * * * Decedent acquired the leasehold in Lot 33 in 1907 at a cost of $100,000 cash. This amount being greater than the fair market value of $75,000 at March 1, 1913, constitutes the allowable basis. It follows that the total basis for computing gain derived from the sale of decedent's leaseholds in Lots 33 and 34 in 1928 is $175,000, exclusive of improvements."

It is contended that the Board erred in the exclusion of evidence. At the commencement of the hearing, expert witnesses for petitioners testified as to the value of the leaseholds on March 1, 1913 without specifying the elements they had considered in arriving at the value. From counsel's remarks at the time, it is apparent that he was under the impression he could recall these same witnesses in rebuttal. The Board did not correct this impression. Thereupon respondent's expert witnesses testified as to the value of the leaseholds on March 1, 1913. On cross-examination it developed that these witnesses had considered various circumstances and facts bearing on the value, but had excluded the tax exemption equity.

In rebuttal petitioners sought to introduce testimony to the effect that the fee was worth $1,000,000; that the tax exemption factor was the largest single element of value in the leaseholds; that the lots were worth more together than as separate units; and that the value of the leaseholds excluded the improvements which were attached to the fee.

■■ It is true that the orderly presentation of each party's case would leave petitioners in rebuttal with nothing to do, except to meet the new facts put in by the respondent. The primary rule is to exclude all evidence which has not been made necessary by the opponent's case, though this rule may be relaxed at the discretion of the trial court. Wigmore, Evidence, Vol. 3, Sec. 1873 (1904 Ed.). It is also clear that most of petitioners' testimony in rebuttal could have been put in originally in their case in chief. However, we are convinced that counsel for petitioners reasonably labored under the impression that in rebuttal he would be permitted to recall his expert witnesses. Under such circumstances, since neither surprise nor injustice could have occurred to the respondent, fair play itself compelled a departure from the customary rules of procedure. In its nature the testimony in rebuttal contradicted the respondent's witnesses. The fact that it might have been offered in chief did not preclude its admission in rebuttal. St. Paul Plow-Works v. Starling, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404; French v. Hall, 119 U.S. 152, 7 S.Ct. 170, 30 L.Ed. 375; Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663.

■ Normally such a contention as here made finds response in reversible error. But the record shows clearly that petitioners suffered no harm. Despite the claimed exclusions, they were allowed to introduce their evidence in rebuttal. Of the enumerated instances of excluded evidence, only one instance, i. e., the failure to allow petitioners' experts to express their opinion on the value of the fee, has substance. Although at first this particular evidence was excluded, later the experts were allowed to state that the land was worth $20,000 per front foot. In fact, petitioners were allowed in rebuttal to introduce the very evidence claimed to have been excluded. The record further indicates that the Board received testimony in rebuttal,

which sought to analyze the value of the leaseholds. Moreover, these experts were also allowed to criticize the methods used by respondent's experts. In addition, after the case on both sides had been closed, petitioner's request to submit additional evidence was granted and the new evidence was considered by the Board.

■ Petitioners next complain of the action of the Board in admitting in evidence excerpts from a record of appraisement proceedings for the appraisal of a portion of Block 142 in 1915. Before the Board only one specific objection was suggested as to the admissibility of the exhibit. Here in this court four grounds are argued, but not the specific objection made before the Board. A specific objection to evidence does not save for review grounds not specified.

■■ It is also contended that the Board erred in considering the sale of the leasehold on July 1, 1915 as being too remote in time from March 1, 1913 to have any probative effect upon the valuation of the leaseholds on Lots 3 and 33 on March 1, 1913. The price may be put in evidence, if the sale is within a time so recent that its cost affords some indication of its value on March 1, 1913. The nearer the date of sale to March 1, 1913 the greater probative respect will be given to the sale price, but it is for the Board to determine the weight to be given such evidence. In Aledo Terminal Ry. Co. v. Butler, 246 Ill. 406, 92 N.E. 909, the court held that proof of the price paid three years prior to the time of trial should have been admitted.

■ Petitioners argue that we would be justified in the instant case in finding that the fair market value of the leaseholds on March 1, 1913 was $600,000. The answer is found in Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346, where it was held that this court has no power to make an independent determination of the matters which had been in issue before the Board.

We now come to the real question, and that is whether there is substantial evidence supporting the findings of the Board. It will not be necessary to recite in detail the testimony before the Board. Briefly, the record discloses on behalf of petitioners that two experienced real estate appraisers, agents and dealers testified to the value of the leaseholds, exclusive of improvements, as being $490,089.60, on March 1, 1913, and in so fixing the value they lay particular stress on the fact that the tax exemption was the largest single element in the leases. Respondent's witnesses fixed the value at $150,000 to $170,000, including improvements. They based their opinions on knowledge of sales; long acquaintance with the lots; history of transactions on State Street and relative conditions of business; rentals payable; and revaluation provisions of the fee under the leases. They excluded the tax exemption equity from their opinions of the values, although they agreed it was an element to be considered.

■ The determination of value involves a question of discretion, calling for sound and reasonable judgment, having as its basis due and proper consideration of all relevant facts and circumstances. The uncontradicted opinions of expert witnesses are not conclusive, but the Board may not arbitrarily ignore or discredit their testimony. Their testimony should be weighed in the light of the other facts developed in the case. In this case there is substantial evidence to support the Board's conclusions, and these conclusions must be accepted. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

■ Finally it is contended that the Board did not apply the correct basis for determining gain or loss on the sale of the leasehold on Lot 34. Petitioners proved that the cost of the leaseholds on Lots 3 and 33, acquired in 1907, was $81,800 and $100,000 respectively. Decedent used these leaseholds in his business. In 1915 he exchanged the leasehold on Lot 3 for the leasehold on Lot 34 on an even basis. The leaseholds on Lots 33 and 34 were then held by decedent for productive use in his business. Thus, the transaction in 1915 was merely an exchange of like capital assets. See section 112(b)(1) and section 113 (a)(6) of the Revenue Act of 1928, Chap. 852, 45 Stat. 791, 816, 818, 26 U.S.C.A. §§ 112(b)(1), 113 note. Under such circumstances, section 113(a)(6) provides that the basis of the asset received shall be the same as the basis of the asset exchanged. In other words, the basis of the leasehold on Lot 34 for purposes of determining gain or loss in subsequent transactions is the basis of the leasehold on Lot 3. It follows, therefore, that the basis of the leasehold on Lot 34 is the

fair market value of Lot 3 on March 1, 1913 or the cost of that property when acquired in 1907, whichever was greater. The Board in its supplemental opinion of February 3, 1936 disregarded the $81,800 cost value of Lot 3 in 1907, which is higher than its $75,000 market value in 1913. In this respect the Board erred.

Our conclusion is that the order of the Board of Tax Appeals should be reversed and that the cause be remanded with instructions for such further proceedings as may be deemed advisable not inconsistent with the views herein expressed.

It is so ordered.