**ZURICH v. WEHR.**

**No. 9188.**

Circuit Court of Appeals, Third Circuit.

Argued May 5, 1947.

Decided Sept. 22, 1947.

McLAUGHLIN, Circuit Judge, dissenting.

Samuel Weinrott, Mark E. Lefever, Lewis Weinstock and Conlen, LaBrum & Beechwood, all of Philadelphia, Pa., for appellant.

Robert A. Detweiler and Geo. H. Detweiler, both of Philadelphia, Pa., for appellee.

Before BIGGS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

· The appeal in the case at bar is directed to alleged errors by the court below in the reception and exclusion of certain evidence. As will be seen from the statement of facts which follows, no small portion of the responsibility for the alleged irregularities can be traced to a lack of artistic presentation by counsel for the litigants. In view of the fact that the instant case has now

been tried for the third time,[1] we are reluctant to measure with Procrustean standards the discretion exercised by the trial court in the reception and exclusion of that testimony; and it is not without regret that we come to the conclusion that the case should be tried a fourth time.

This is a personal injury case under the Jones Act, 38 Stat. 1185, 41 Stat. 1007, 46 U.S.C.A. § 688. It originally included a claim for maintenance and cure on which the appellant was awarded damages and which is no longer an issue. There was a jury verdict in favor of the defendant on the indemnity action. The trial judge denied plaintiff's motion for a new trial and this appeal is from that decision.

The appellant was captain of the barge "Greater." At the time of his accident, he was 55 years old. Born in Austria, his incomplete knowledge of English made it necessary for him to give his testimony at the trial through an Italian interpreter. The accident occurred around midnight of February 28, 1942. At the time, appellant was alone on the barge and his was the only testimony as to the accident itself. The barge had been towed that day in the Delaware River from Pier 82 Philadelphia to the Philadelphia Navy Yard. According to the plaintiff, in the course of the voyage the barge had taken in water faster than it could be pumped out. Because of this, it was brought alongside the sea wall at the Navy Yard and tied up there. While trying to rig up an emergency pump, plaintiff slipped on a wet platform, striking a stanchion and injuring his left shoulder and back. The defendant denied that there had been any such accident and, among other evidence in support of this contention, introduced the log book of the tug "Atlantic City," which he claimed had towed the barge on the particular occasion. The purpose of this evidence was to show that there was no entry of accident to plaintiff in the log book. The captain and crew of the "Atlantic City" were also permitted to

testify. Plaintiff objected to that evidence on the ground that the tug had not been identified as having been the vessel which towed the "Greater." This is appellant's first point on appeal.

Plaintiff on cross examination was asked, "What was the name of the tug that picked you up to take you to the Navy Yard?" He answered, "I think it was called the 'Atlantic' but, of course, I am not sure as I didn't expect all this to happen." He was then asked, "Who was the Captain on it?" He replied, "The Captain belonged to the Pennsylvania Tug. I don't know his name." He said that the tug tied up to the lighter and started for the Navy Yard at 8:20 A.M. On direct examination, he stated, "A tug came from the Pennsylvania Company and attached itself to my lighter."

Admittedly the barge was loaded with steel piling. Captain Derrickson of the tug "Atlantic City" testified that on February 28, 1942, his tug hauled a lighter loaded with steel piling from Pier 82 to the Navy Yard. He picked up the lighter at 8:50 A.M. on that day and delivered it to the Navy Yard at 10:20 A.M. The "Atlantic City" is a Pennsylvania Railroad tug. The only tugs which that concern had on the Delaware River at the critical time were the "Atlantic City," "Camden," and "Greenwich." There was a tug on the Delaware River during that period named the "Atlantic" and owned by the Standard Oil Company. The lighter towed by the "Atlantic City" was not identified by name in the tug's log and Captain Derrickson could not say that it was the "Greater."

L. J. Koenning, the superintendent of the particular job at the Navy Yard, testified that the lighter "Greater" arrived there on February 28, 1942, between 10 and 11 A.M.; that it was the only lighter which came in that day; that it was loaded with piling; and that it was brought in by Pennsylvania Railroad tugboat. He saw both the tug and the barge come in, but did not know the name of the tug. He identified a demur-

---

[1] Suit was originally instituted under the Longshoremen's and Harbor Workers' Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. It was dismissed without prejudice by this court, for want of jurisdiction, after plaintiff had won judg- ment in the lower court. Zurich v. Cardillo, 3 Cir., 1944, 143 F.2d 249. At the second trial, based upon the same Complaint as that at bar, the jury disagreed and was discharged without a verdict.

rage bill from the Pennsylvania Railroad Company for one day's demurrage on the lighter "Greater," which he said was for the trip in question.

The trial judge early in his charge told the jury that "It does not seem to the court here that it is in dispute between the plaintiff and defendant * * * that the said lighter was loaded with steel pilings at Pier 82 under the propulsion of a Pennsylvania tug named the 'Atlantic City' and was being transported to a portion of the Delaware River Navy Yard * * *." The court later said, "I have said the tug transporting the lighter was the 'Atlantic City' because the logs in evidence so indicate and the plaintiff himself so testified that he thought the name of the tug was 'Atlantic', but this is left for you as a question of fact to be determined, whatever may be your opinion, if it may differ with that of the court."

Following the charge, counsel for the plaintiff at side bar said to the court, "If Your Honor please, I except to that portion of the charge wherein you say that it is [not] in dispute that the tug 'Atlantic City' was the tug which towed this barge down." The court replied, "I did not say that. I said it was my opinion—if they found differently, they could, but that was my opinion, which I have got a right to state."

■ It clearly appears from the above that whether the tug which towed the barge "Greater" was the Pennsylvania Railroad tug "Atlantic City" was a question of fact to be determined by the jury, as was indicated by the trial court. In this situation the log of the "Atlantic City" and the evidence of her captain and crew were quite properly admitted.

■ Appellant's second point is that the District Judge charged that it was undisputed that the "Atlantic City" towed the "Greater." This is completely disposed of by the above quotations from the court's charge, where he fairly and plainly left that question to the jury.

Appellant's final point has to do with the exclusion of testimony of Messrs. Skalamera and Ruggieri and that of Dr. Bartel, all of whom were called in rebuttal by the plaintiff.

■ By Skalamera, plaintiff offered to show the condition of the barge on March 1, 1942, shortly after the accident, and also that on that day Skalamera saw plaintiff with his arm in a sling. All this had been testified to by plaintiff as his own witness and was very much a part of his affirmative claim. In barring the testimony, the court said, " * * * the former record in this case shows that this man was a witness for the plaintiff in chief on your trial there, and there is no showing that he was not available here." The trial judge was obviously correct in his decision as to this evidence.

■ The testimony of Ruggieri, according to plaintiff's brief, was "offered in rebuttal for the plaintiff to corroborate very material aspects of plaintiff's testimony." He was said to be a member of the pile driving crew, and it was represented that he would testify as to the condition of the barge when it came to the Navy Yard. Counsel advised the court that Ruggieri had not been discovered until Saturday, January 26, 1946, during the trial. The explanation given for not finding Ruggieri until then was that "we" did not have the payroll sheets of Ruggieri's employer at the last trial. The evidence was cumulative. It was unimportant. The trial judge was well within his discretion in refusing it.

■ The circumstances surrounding the exclusion of Dr. Bartel's testimony merit more detailed consideration. As has been indicated above, probably the basic issue in the litigation was whether or not plaintiff had actually suffered the accident for which he seeks the imposition of liability. In April, 1945, prior to the trial which was terminated without a verdict, defendant sought and procured a court order requiring plaintiff to be examined by Dr. George Wilson. That doctor's diagnosis was introduced in that trial in the form of a written report. At the trial from which the instant appeal is taken, plaintiff in his case in chief produced three doctors who testified that he was suffering from a nerve injury as the result of his accident. Defendant then introduced medical evidence which tended to show that plaintiff had a constitutional condition not connected with

the accident; but defendant did not produce Dr. Wilson or otherwise give the jury the benefit of his information. One of the doctors called by defendant, on cross examination, intimated that his diagnosis might be affected if Dr. Wilson, whom he considered to be a very competent neurologist, were to state that plaintiff had a neurological condition. In open court, plaintiff thereupon called upon defendant to produce Dr. Wilson. Sua sponte, the court said, "Isn't he available to you just the same as he is to the defendant?" Plaintiff replied, "We will produce him by subpoena." The court then remarked, "Then you have something to talk about."

It would not be illogical to infer that the colloquy recited above was a dramatic moment in the presentation of the case. What effect it had on the jury cannot be known; but surely it can be argued with force that the introduction of testimony by Dr. Wilson was awaited with more than average interest. Be that as it may, it must be remembered that plaintiff's case in chief had already closed, and that the court's comment in answer to plaintiff's offer to subpoena could be interpreted only as an exercise of discretion in favor of admitting that rebuttal evidence.

A week end elapsed and, on resumption of the trial, plaintiff's counsel said to the court at side bar, "* * * over the week end and this morning we endeavored to subpœna Dr. Wilson—but were advised that Dr. Wilson is just recovering from an illness. However, his assistant, Dr. Bartel, who was present throughout the examination made of Zurich at the time referred to, has offered to come and testify in lieu of Dr. Wilson, and we offer him to prove that this man is now suffering from a nerve injury * * *." Apparently before counsel for plaintiff finished his explanation of the purpose of Dr. Bartel's testimony, defendant's counsel interposed an objection. The court immediately sustained the objection, upon the ground that it was plaintiff's duty to call any doctor who previously examined him. Plaintiff then said, "I wonder if you will tell the jury that we endeavored to bring him in." To this, the court replied, "No, I will not. I will tell the jury, if you ask me to charge on that, that every litigant has the right to subpoena such witnesses as he wants to sustain his idea of the case." Exception was duly taken.

In his charge to the jury, the trial judge made no reference to the failure to produce Dr. Wilson. He did tell the jury, however, that "This case has demonstrated, more or less, a battle between the experts as to what the cause of the disability is from which plaintiff now suffers," and that "You should give to each and every witness that degree of credibility which under all the circumstances he seems to be entitled to." The jury, therefore, was sent into its deliberations without the testimony of either Dr. Wilson or his assistant, and without knowing why plaintiff had failed to produce Dr. Wilson after asserting, with apparent court approval, that such would be done. In the light of all the circumstances, we believe this ruling to have been erroneous and potentially fatal to plaintiff's case.

Examination of cases involving similar principles appears to support our conclusion. In French v. Hall, 1886, 119 U.S. 152, 7 S.Ct. 170, 30 L.Ed. 375, a case was tried for the second time. During cross examination on the stand, defendant testified that he had never told plaintiff's attorney, one Carpenter, that he promised to pay $5000. Plaintiff, in rebuttal, offered the testimony of Carpenter; but the court refused to permit Carpenter to be sworn because he was acting as plaintiff's attorney at the trial. Later the court said Carpenter was in fact competent to testify but that the testimony properly belonged in plaintiff's case in chief. The Supreme Court, reversing the lower court, intimated strongly that the proffered testimony was competent in rebuttal to impeach the credibility of defendant's witness. Going further, the court said that, even if the testimony was strictly competent only in chief, plaintiff was entitled to timely exercise of discretion by the court. Applying this principle to the case at bar, we feel that the court made a timely exercise of discretion when it indicated that Dr. Wilson's testimony would be received in rebuttal, and that plaintiff was deprived of that exercise of discretion by the court's subsequent reversal of its previous ruling, particularly so in the

light of the court's refusal to explain the situation to the jury.

In Throckmorton v. Holt, 1901, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663, the proponents had introduced evidence indicating that General Sherman had signed a will as witness. Contestants then produced a witness who testified to the contrary. In rebuttal, proponents sought to introduce as witness General Sherman's son; but the trial court sustained objection to that evidence. Again the Supreme Court held that the evidence should have been received. The court said, 180 U.S. at pages 564, 565, 21 S.Ct. at page 479, 45 L.Ed. 663, "The case in regard to the genuineness of the paper was very closely contested, and was one of the vital points in the trial. * * * In such a case as this, where there was no evidence by an eyewitness as to the signatures of the parties, it became of the greatest importance that no admissible evidence should be excluded when offered upon the question of their genuineness. For this error we think a new trial will have to be granted."

■ Friend v. Commissioner of Internal Revenue, 7 Cir., 1939, 102 F.2d 153, on its facts bears little resemblance to the case at bar; but a comment contained therein appears particularly apropos. The court said, 102 F.2d at page 155, "It is true that the orderly presentation of each party's case would leave petitioners in rebuttal with nothing to do, except to meet the new facts put in by the respondent. The primary rule is to exclude all evidence which has not been made necessary by the opponent's case, though this rule may be relaxed at the discretion of the trial court. Wigmore, Evidence, Vol. 3, Sec. 1873 (1904 Ed.). It is also clear that most of petitioners' testimony in rebuttal could have been put in originally in their case in chief. *However, we are convinced that counsel for petitioners reasonably labored under the impression that in rebuttal he would be permitted to recall his expert witnesses. Under such circumstances, since neither surprise nor injustice could have occurred to the respondent, fair play itself compelled a departure from the customary rules of procedure.* In its nature the testimony in rebuttal contradicted the respondent's witnesses. The fact that it might have been offered in chief did not preclude its admission in rebuttal. [Citing cases.]" (Emphasis supplied.) And see discussion of second ground of reversal, United States v. Bayer, 67 S.Ct. 1394, 1396–1398.

While the cases outlined above are readily distinguishable from the case at bar, it seems to us that the underlying principle is applicable. What the trial judge described as a "battle of the experts" was permitted to go to the jury without the assistance of the testimony of a doctor which might have reconciled the difference in opinion expressed by those experts. To have permitted Dr. Bartel to testify could not have been unfair to defendant, since defendant had been the party responsible for the court order authorizing the examination of plaintiff. Plaintiff's reasonable belief that he would be permitted to call Dr. Wilson may well have influenced the entire course of his cross examination of defendant's witnesses. Even if the later refusal of the court to permit the introduction of Dr. Bartel's testimony be deemed no abuse of discretion, fair play demanded that the court at least advise the jury why the promised testimony was not forthcoming, so that the jury itself could intelligently determine what weight should be placed on the testimony of the battling experts.

For the reasons stated, the judgment appealed from will be reversed and the cause remanded with directions to grant a new trial.

McLAUGHLIN, Circuit Judge (dissenting).

This judgment is being reversed because of the trial incident having to do with the non-production by the appellant of Dr. George Wilson as a witness; specifically for the refusal of the District Judge to permit a Dr. Bartel to testify "in lieu of Dr. Wilson," and the court's further refusal to "tell the jury that we [appellant] endeavored to bring him [Dr. Wilson] in."

The cases cited in support of the majority opinion concern admittedly competent witnesses, and the only question in those decisions was whether the proffered evidence was important enough to override the ordinary trial procedure with respect to re-

buttal testimony. Those elements are not here present. The statement of facts shows plainly that Dr. Bartel was not a witness properly in this case. The situation which incidentally had been created on behalf of the appellant centered solely around Dr. Wilson. Dr. Bartel was not even mentioned at the time. He was merely Dr. Wilson's assistant who had been present during the examination of the appellant by Dr. Wilson. There is not the slightest suggestion that he had ever examined appellant. Certainly he could not have testified as to Dr. Wilson's findings or the latter's conclusions therefrom.

In addition, the tendered evidence was, as indicated by the lower court, purely cumulative. Three doctors for the appellant had already testified that appellant was suffering from a nerve injury, which was the only purpose for which Dr. Bartel was presented. As Judge Jones, speaking for this court said in United States v. Montgomery, 3 Cir., 126 F.2d 151, 153, "It is well settled that the order of the reception of evidence lies largely in the discretion of the trial judge, whose action will not be reversed on appeal unless it amounts to a gross abuse of discretion." Cf. National Surety Corporation v. Heinbokel, 3 Cir., 154 F.2d 266.

The majority also stress the refusal of the lower court to explain the absence of Dr. Wilson to the jury. But there was nothing before the District Judge to justify the requested explanation. Appellant's attorney had stated in open court that he would produce Dr. Wilson. A week end elapsed, and on the resumption of the trial the attorney said, "Over the week end and this morning we endeavored to subpoena Dr. Wilson, but were advised that Dr. Wilson is just recovering from an illness". There was no offer of proof as to Dr. Wilson's actual condition as related to his ability to appear or of any attempted service of subpoena upon him. Nor was there an application under the alleged unusual circumstances to take the doctor's deposition prior to the conclusion of the trial. A foundation could have been readily and legitimately laid which would have warranted counsel's reference to the occurrence in his summation, if that had been desired. Under the circumstances, for the District Judge to have assumed as facts assertions without evidential background and to have passed them along to the jury might well have resulted unfairly to the appellee.

At the very least I fail to see that the trial court committed substantial error and I would affirm the judgment below.