**STATE of Maine**

v.

**Thomas H. MITCHELL.**

Supreme Judicial Court of Maine.

June 14, 1979.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), John H. Montgomery, Asst. Dist. Atty., Portland, for plaintiff.

Daniel G. Lilley (orally), E. Paul Eggert, Portland, for defendant.

Before McKUSICK, C. J., and ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Thomas H. Mitchell had been found guilty by a jury of kidnapping. 17–A M.R. S.A. § 301. A judgment of conviction was accordingly entered, Mitchell was sentenced and has appealed.

We deny the appeal.

## FACTS

Two sixteen-year old girls were hitchhiking between Portland and Kittery. They were ultimately picked up by the defendant who, rather than proceeding on toward Kittery, drove in nearly the opposite direction and finally proceeded to stop his car, telling the girls that from that point to Route 1 was but a short distance. One of the young ladies was seated in the front passenger seat and the other in the back seat of this two-door foreign-made car. When the girl seated in front alighted, the other girl started to do likewise, but before she could do so the defendant accelerated the vehicle, leaned over, closed the door and proceeded to drive away with the young lady as an

unwilling passenger. The police were promptly alerted. The defendant, however, released his passenger at a gasoline service station before there was any contact with the police.[1]

■ Appellant sought to impeach the credibility of the young lady who was not abducted, but who had testified, by introducing evidence of her prior juvenile adjudication for which she was on probation at the time of the trial. This evidence was excluded pursuant to Rule 609(d), M.R. Evid.[2]

Appellant premises his argument on the holding in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). On its facts the instant case is readily distinguishable. In *Davis* the evidence was admissible because it demonstrated the real possibility of influencing the juvenile's testimony because of undue pressure generated by the fear of a possible probation revocation. In the instant case the justice presiding made it quite clear that he would not exclude the proffered testimony if it were offered to prove that the witness "by being on probation [was under] some threat, express or implied, that if she didn't testify the probation might be revoked." Defense counsel, however, assured the justice that such was not his purpose, it being merely to show that, in fact, she had a juvenile record. This ruling correctly reflects existing Maine law interpreting Rule 609, M.R.Evid., as recently decided in *State v. Sampson*, Me., 387 A.2d 213, 216–17 (1978).

■ A defense witness had testified that the kidnapped victim had picked the "wrong guy" when, on a prior occasion, she had complained of being assaulted, thus suggesting her unreliability as a witness. To counteract this evidence the State, in rebuttal, introduced the testimony of a police officer. The officer testified that the victim had initially identified a particular person from a photographic lineup and subsequently admitted that the identification was in error. He testified that the victim "could not identify an assailant," and that he observed no indication during the course of that investigation that this young lady was "lying about the allegation." Defense counsel then sought to cross-examine the police officer by delving into the details of the prior case but was prevented from so doing by a ruling of the presiding justice.

Since the proposed area of cross-examination had to do with a collateral matter, the trial judge is invested with broad discretion and may exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, M.R.Evid. *See* Field and Murray, *Maine Evidence*, commentary 403.4.

The ruling was within proper discretionary limits.

## II

The appellant had called a sergeant of the Maine State Police who had interviewed the victim in this case. On direct he was questioned as to what she told him and her description of the kidnapper. At the conclusion of a rather lengthy cross-examination by the prosecutor the record discloses the following:

Q Do you frequently interview people that are referred to you from other departments?

A Yes, sir.

Q In fact that's your job, is it not?

A Yes, it is.

1. During the time that this young lady was with the defendant, he allegedly compelled her to engage in certain sexual acts. Based on her testimony the grand jury indicted the defendant for gross sexual misconduct, 17–A M.R.S.A. § 253(1)(A); rape, 17–A M.R.S.A. § 252(1)(B), as well as for kidnapping. The three indictments were tried together but the traverse jury was unable to agree except on the kidnapping indictment and the presiding justice ordered mistrials for the other two offenses.

2. (d) Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule except in other juvenile proceedings.

Q  Specifically, what is your job at the State Police?

A  I'm [a] polygraph examiner.

Redirect immediately thereafter consisted of four questions, following which defense counsel at side bar moved for a mistrial because of the response, "I'm [a] polygraph examiner." After hearing extended argument by defense counsel and the prosecutor, the Court ruled as follows:

I think that under the circumstances, and this doesn't appear on the record, but the question was asked, it's one of the very last questions, and although defense counsel argued that that made it even more dramatic, the defendant (sic) gave his answer in a hardly audible tone and almost wasn't heard I think by people in this courtroom. I'm not certain that all of the jurors did hear that and the manner in which counsel made a motion for a mistrial after he left the witness stand was such as to not highlight the answer, and so that I don't think that any undue emphasis at that point was given to his answer.

In any event, polygraph tests are not admissible and the jury has no actual way of knowing what the results of such a test were if they really perceived that a polygraph test is a lie-detector test and many of the jurors may not realize that. They are not quite as sophisticated and knowledgeable as lawyers know in this area who deal with these kinds of questions day in and day out, and I guess I have to feel that in this particular case that that question and answer is not of severe magnitude as to require a mistrial which should be sparingly granted.

.    .    .    .    .

THE COURT: The Court has also decided that it will not give a curative instruction either at this time or when final instructions on the law are given to the jury for the reason that I feel it would unduly highlight this part of the trial which may have been completely overlooked I trust.

■ Despite the fact that objection was not made immediately, we feel that the matter has been appropriately saved for appellate review since the motion for mistrial was made as soon as possible in such a manner as not to emphasize the testimony.

■ We adhere to the rule that the results of polygraph tests are not admissible in Maine. *State v. Mower*, Me., 314 A.2d 840, 841 (1974). We have not adopted a per se rule granting a new trial merely because there has been a reference in the testimony to the fact that such a test has been taken. *State v. Gagne*, Me., 362 A.2d 166, 170–71 (1976). A fortiori, where, as here, there is no evidence that any test was ever administered, granting a new trial would not be automatically mandated.

In deciding whether testimony such as that hereinabove quoted was prejudicial, we must show great deference for the judgment of the presiding justice. He heard the testimony; he observed the witness; he knew the atmosphere of the courtroom and the composition of the jury. The justice was in a unique position to appraise the quality of the opposing evidence, recalling that the defense interposed was one of alibi. For example, the young lady who was the front-seat passenger was a witness and described the appellant as well as the vehicle he was alleged to be driving. The victim's testimony likewise dealt with these matters. Juxtaposed against this testimony was that offered by the defense. Thus, the justice was in a superior position to see the real issues emerge and weigh the prejudicial impact thereon of the improper question. We place additional significance on the fact that when he announced that he was not going to give a curative instruction "unless asked to do so," defense counsel accepted that ruling without comment.

In sum, bearing in mind all the circumstances, we are unable to say that the justice presiding abused his discretion in refusing to grant a mistrial.

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and WERNICK, JJ., did not sit.