STATE of Maine

v.

Clinton TRAFTON.

Supreme Judicial Court of Maine.

Argued Nov. 6, 1980.

Decided Feb. 26, 1981.

David W. Crook, Dist. Atty., J. Michael Talbot (orally), Asst. Dist. Atty., Skowhegan, for plaintiff.

Lawrence T. Potter (orally), Waterville, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

After a trial in Superior Court, Somerset County, the jury adjudged the defendant, Clinton Trafton, guilty of theft by unauthorized taking or transfer, 17–A M.R.S.A. § 353 (1980 Supp.). The defendant brings this appeal from the judgment entered on the verdict.

We sustain the appeal.

On May 8, 1979, Stanley McGray, owner of a gas station in Skowhegan, had in a cracker box six bank bags containing between $8,000 and $10,000. That evening McGray left Chuck Robins, Jr., alone with the box of money in McGray's van. The next morning, May 9, McGray took the box to his gas station. The defendant, as had been his habit for two or three months, met McGray at the gas station. Nobody else entered the station building. McGray left the defendant alone in the station for twenty minutes with the box. Upon McGray's return, the defendant left. The evidence shows that later that day McGray reported to the police the theft of one bank bag containing approximately $1,000, and stated that the money might have been taken the previous evening. On May 10, McGray told the police that all six bags had been in the box at the gas station the morning of May 9th.

In addition to McGray, two other witnesses testified for the State. Horace Libby's testimony was thoroughly impeached by three other witnesses. Douglas Beane testified to a conversation with the defendant as follows (in pertinent part):

Q. About that time did you have occasion to talk to Clinton Trafton?

A. Some time during June.

.    .    .    .    .

A. I said, why would [McGray] want you arrested. He said [McGray] claims I took some money up there and I didn't do it. He said [McGray] offered *to give me a hundred dollars to take a lie detector test. I said, why don't you—*

[Defense Counsel]: Objection.

The Court: Overruled.

A. So I said, I would take the lie detector test.

[Defense Counsel]: Objection.

[Discussion at side bar. Objection overruled.]

.    .    .    .    .

A. .... And I said if you didn't take the money it will prove you're not guilty and there's nothing to worry about.

Q. And what did the Defendant say?

A. No, he didn't want to take it and wanted to know if [McGray] would talk. ... He said, maybe [McGray will] let me pay him back so much each week.

Before Beane left the stand, the defense counsel asked for curative instructions to explain that lie detector tests will not necessarily establish guilt or innocence. The trial court refused this request.

At the conclusion of McGray's testimony, the defense counsel attempted to ask McGray about a 1975 conviction for simple larceny, but was unable properly to formulate the question.[1] Defense counsel then asked for the right to recall McGray, to

which the trial court replied "You have that right anyway." When the defense counsel later attempted to recall McGray to ask about his prior conviction, the trial court refused to allow him to do so, stating that the prejudice to the State's case would significantly outweigh the probative value of that evidence.

## I

The defendant argues that the trial court erred by allowing Beane to testify about the defendant's unwillingness to take a lie detector test.

We agree.

■ Both the results of polygraph tests and a party's willingness or unwillingness to take such a test are inadmissible. *State v. Mower*, Me., 314 A.2d 840, 841 (1974). "[S]ince polygraph tests are ... unreliable and not usable as evidence in a trial, evidence that one has refused to submit to such test ... cannot be considered as having a bearing on the question of consciousness of guilt." *Id.*[2]

The State argues that *State v. Mitchell*, Me., 402 A.2d 479 (1979) supports the admission of Beane's testimony. There a policeman testified as to what the alleged kidnapping victim had told him, and at the end of his testimony stated that he was a polygraph examiner. There was no evidence that a polygraph examination was in fact given, nor was there evidence that any party was willing or unwilling to take such a test. The trial judge denied a motion for a mistrial, though he offered to give curative instructions to the jury upon request. The instant case is easily distinguished, primari-

---

1. For a discussion of proper methods of impeaching a witness by evidence of prior convictions, see *State v. Toppi*, Me., 275 A.2d 805, 813 (1971); M.R.Evid. 609.

2. The State does not argue that polygraph examinations have "reached the stage of scientific development and accuracy that permits admission of the result in evidence." *State v. Mottram*, 158 Me. 325, 329, 184 A.2d 225, 228 (1962). It should be noted that this court has

adverted in the past to a reason for exclusion of lie detector evidence in addition to that of its unproven scientific reliability: "Lie detector evidence impinges upon that function which is so uniquely the prerogative of the jury as factfinder: to decide the credibility of witnesses." *State v. Williams*, Me., 388 A.2d 500, 502 (1978); *but see Id.* at 506 n. 1 (Nichols, J. concurring).

ly because Beane's testimony squarely presented the jury with evidence of the defendant's unwillingness to take a lie detector test. The jury may well have considered the defendant's unwillingness as evidence of his consciousness of guilt—the very evil which requires exclusion of such evidence.

■ Finally, the trial court's ruling emphasized that it was the defendant, in his out-of-court conversation with Beane, who brought up the subject of lie detector tests. In some circumstances, after a defendant has introduced testimony *at trial* regarding his willingness to take a lie detector test, the State may be allowed to rebut with evidence of the defendant's unwillingness to take such a test. *State v. Fox*, 257 Iowa 174, 131 N.W.2d 684, 687 (1964); *Williams v. State*, 238 So.2d 137, 139 (Fla.D.C.A.), *cert. denied*, 241 So.2d 397 (Fla.1970); *cf. State v. McDonough*, Me., 350 A.2d 556, 562–63 (1976) (Not manifest error for State to refer to polygraph examination while rehabilitating witness after defendant referred to examination while attempting to impeach that witness's testimony). Thus, the relevant question is not who first broached the subject of lie detector tests *outside* the courtroom, but rather who elicited such testimony *at trial*. In the instant case, the State, not the defendant, elicited the objectionable testimony. It should, therefore, have been excluded on defendant's timely objection, and it was reversible error not to do so, especially in view of "the serious danger that a mechanical device, rather than the judgment of the jury will decide credibility." *State v. Williams*, Me., 388 A.2d 500, 506–07 (1978); *see also State v. Casale*, 150 Me. 310, 320, 110 A.2d 588, 592–93 (1954).

## II

The defendant argues that the trial court erred in refusing to allow counsel to recall McGray in order to question him about his prior conviction for simple larceny.

We agree.

■ The trial court erred by refusing to allow the recall of McGray. It is true that a trial court has discretion in deciding whether to allow the recall of a witness. *See* M.R.Evid. 611(a); *State v. Kingsbury*, Me., 399 A.2d 873, 875 (1979). If, after a request is made for the right to recall a witness, the trial court leads the requesting party to believe that he will be allowed to recall the witness, and allowing the recall would not prejudice the opposing party, then fair play compels the trial court to in fact permit the recall. *See Friend v. Commissioner of Internal Revenue*, 102 F.2d 153 (7th Cir. 1939); *Zurich v. Wehr*, 163 F.2d 791 (3d Cir. 1947). By informing defense counsel that he had the right to recall McGray, the trial court in the instant case led him to believe he would be permitted later to recall McGray, and may have induced counsel temporarily to cease his line of inquiry with the witness. Therefore, it was error to refuse the recall.

We must delve further, however, since the trial court did not indicate at that time how it would rule on the admissibility of evidence of McGray's prior larceny conviction. Thus, even if defense counsel had been permitted to recall McGray, the trial court might have ruled to exclude evidence of the prior conviction. If the trial court could properly have excluded that evidence, the failure to allow the recall of McGray might be deemed harmless error.

■ We find that the trial court could not have properly excluded evidence of McGray's prior larceny conviction. Under M.R.Evid. 609(a)[3] evidence of a prior conviction involving dishonesty or false statement is admissible to attack a witness's

---

3.  M.R.Evid. 609(a) states:

    General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment for one year or more under the law under which he was convicted, or (2) involved dishonesty or false statement,

credibility if the probative value of the evidence outweighs the prejudicial effect to the defendant. The crime of larceny involves dishonesty or false statement. *State v. Charest*, Me., 424 A.2d 718, 718–719 (1981); *see State v. Gervais*, Me., 394 A.2d 1183, 1186 (1978). In addition, the trial court could not have found that the probative value of the evidence did not outweigh the prejudicial effect *to the defendant*, because evidence which impeached the credibility of the complainant would not have prejudiced the defendant in any way. Therefore, it would have been error for the trial court to have excluded evidence of the conviction under Rule 609.

■ The State argues that the trial court could have excluded the conviction under M.R.Evid. 403.[4] Whether Rule 403 may be applied to exclude evidence of a prior conviction used to impeach a prosecution witness, or whether Rule 609 is the exclusive rule to be applied to such situations, is an open question.[5] Assuming, without deciding, that Rule 403 was applicable, then the trial court could properly have excluded evidence of the conviction only if the danger of unfair prejudice *substantially* outweighed its probative value. Prejudice, in this context, means an undue tendency to move the tribunal to decide on an improper basis. *State v. Linnell*, Me., 408 A.2d 693, 695 n. 2 (1979); *State v. Hurd*, Me., 360 A.2d 525, 527 n. 5 (1976). The trial court may have reasoned that McGray's larceny conviction would be used by the jury as evidence that McGray acted in conformity

with his past conduct (*i.e.*, as evidence that McGray, not the defendant, took the missing money). Assuming that M.R.Evid., 404(b) would prohibit such substantive use of the conviction by the jury, the trial court may have concluded that admission of the conviction might have resulted in a jury decision to acquit based upon an improper basis.

■ The evidence supporting a conviction in the instant case is far from overwhelming; the credibility of the State's chief witness, McGray, was crucial. Also, the clear intent of Rule 609(a) is to admit all convictions of prosecution witnesses which fall within the terms of the rule. *See* R. Field and P. Murray, *Maine Evidence* § 609.1 (1976). A general policy of Maine's rules of evidence is that any doubt regarding the admissibility of evidence be resolved in the defendant's favor. *State v. Heald*, Me., 393 A.2d 537, 542 (1978). Finally, admission of the evidence in question would have been accompanied by limiting instructions. In order for the jury system to function, it must be assumed that, absent unusual circumstances, a jury will follow a court's instructions where the instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them. *See Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). Thus, we conclude that the danger of unfair prejudice stemming from admission of McGray's larceny conviction could not have been found substantially to outweigh its probative value. It

---

regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs the prejudicial effect to the defendant.

4. M.R.Evid. 403 states:

  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

5. The original Advisory Committee Note to F.R.Evid. 403 states that it is a guide for situations "for which no specific rules have been formulated." *United States v. Smith*, 551 F.2d 348, 358 n. 20 (D.C. Cir. 1976). For differing views on the interrelation of Federal Rules 403 and 609 in the context of impeaching a defendant with evidence of a prior conviction involving dishonesty or false statement (F.R.Evid. 609, unlike M.R.Evid. 609, provides for *no discretion* in admitting such evidence), see the majority and dissenting opinions in *United States v. Toney*, 615 F.2d 277 (5th Cir. 1980).

would have been error for the trial court to have excluded evidence of the conviction under Rule 403 on the record made below.

Since we find admission of the evidence of the defendant's unwillingness to submit to a polygraph examination to be reversible error, we need not decide whether the failure to allow McGray to be recalled would alone be reversible error. We discuss the latter issue because of the likelihood that it will arise again should there be a new trial.

The entry is:

Judgment vacated. Remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.