STATE OF IOWA, appellee, v. EARL DUANE ROBERTS, appellant.

No. 50784.

(Reported in 121 N.W.2d 513)

MAY 7, 1963.

Earl Duane Roberts, appellant, pro se.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, and Mervin Flander, County Attorney, for appellee.

SNELL, J.—Defendant, Earl Duane Roberts, was indicted, tried before Judge and jury, found guilty and sentenced for the crime of Burglary with Aggravation in violation of section 708.1, Code of Iowa. Throughout the proceedings in the trial court defendant was represented by counsel. In this appeal he appears pro se but his arguments in his own behalf are exhaustive. The record on appeal now before us contains much extraneous matter that might well have been eliminated but there is nothing to indicate that there was lack of skill or ability in the defense below or thoroughness on appeal.

On November 10, 1960, the dwelling house of Mr. and Mrs. Claude Wilharm was entered by masked and armed robbers. Substantial sums of money were taken from the premises and from the persons. The State does not contend that defendant directly committed the burglary. Defendant was tried as a principal under the provisions of section 688.1, Code of Iowa, abrogating the distinction between a principal and an accessory before the fact. Defendant was in the house as a visitor and money was also taken from his person.

Alan Holden and Louis Nelson were later apprehended and admitted the burglary. The burglars implicated and identified defendant as the mastermind who conceived, planned, arranged and managed the entire operation.

Defendant knew the Wilharms and their vulnerability to burglary. According to the testimony of Holden and Nelson defendant timed and scheduled the operation and went to the victims' home in advance to check on arrangements and to facilitate easy entrance. They testified in great detail as to preliminary arrangements, the actual burglary, division of the loot with defendant and subsequent activities.

If the record is free from prejudicial error and the testimony of accomplices sufficiently corroborated there was ample evidence to support the verdict of the jury.

The defendant did not testify and called only one witness in his behalf, the deputy sheriff who had previously testified for the State.

In addition to the two accomplices 21 witnesses were called by the prosecution. They included the sheriff, deputy sheriff, three police officers, a document examiner and 15 others who corroborated bits or parts of the accomplices' testimony or identified exhibits. Taken separately no one witness offered sufficient corroboration. Collectively the witnesses and exhibits traced the activities of the parties involved and showed a corroborating pattern. Detailed recital of the testimony of the many witnesses would unduly extend this opinion and would serve no useful purpose. The problem of corroboration will be discussed in Division VIII infra.

I. In his first two alleged errors relied on for reversal

170

defendant claims that the county attorney in his opening statement to the jury made false statements and thereby and by innuendo prejudiced the jury and denied defendant a fair trial. Five variations between the county attorney's statement and the actual testimony of witnesses are pointed out. Additional statements claimed to be unfounded insinuations are argued.

The opening statement of the county attorney covers 22 pages of the record. It was quite detailed. It outlined the complex the prosecution expected to develop to prove defendant's guilt. Defendant claims that the prosecution planted in the minds of the jury inferences not supported by the evidence.

Other than the sheriff and deputy sheriff all witnesses were excluded from the courtroom except when testifying. As the witnesses were respectively called there was some slight variation in their testimony as to what they saw and heard.

Some memories were weak or failed to fully support the opening statement in minor details. Such a situation is not unusual. Neither does it in itself show prejudicial error. With 23 witnesses called by the prosecution it was almost inevitable that there would be some variation in recitation of details among the witnesses and from the prosecution's opening statement. We have examined the record. We find nothing to indicate any deliberate bad faith.

The general rule is stated in 23A C. J. S., Criminal Law, section 1085, page 102, as follows:

"Because of the limitations on the effect of an opening statement, accused who asserts it as misconduct must prove more than the mere failure to adduce the testimony described in it, and he must prove bad faith in the introduction of such statement. The trial court does not commit error in failing to tell the jury at the close of the evidence that portions of the prosecuting attorney's opening statement were not later borne out by the testimony, at least where the defense fails to ask for such an admonition and the court has already told the jury not to consider the statements of counsel as evidence.

"A fortiori, the prosecuting attorney may outline the facts which he in good faith expects to prove, and which it is competent for him to prove. The trial court should require the

prosecuting attorney to act in good faith in making his opening statement. In determining whether or not he is acting in good faith the trial court has a wide discretion, and necessarily must rely on his good faith as the statement proceeds."

The Iowa rule is stated in State v. Thompson, 241 Iowa 16, 28, 39 N.W.2d 637, 644, as follows:

"Appellant also asserts as an error certain remarks made by Mr. Thayer, State's attorney, in his opening statement to the jury. It is true that in that statement there were statements made as to what the State would prove, which a reading of the record shows was not proven, and some of them are of the nature that might lead us to believe that it was known they could not be proved. However, in every case that is tried, there are usually found statements by counsel as to what they expect to prove but later find that they are unable to do so. While it is not, in all cases, necessary to interpose objections, yet none was entered here and we are not prepared to say that such statements show deliberate bad faith on the part of counsel, such as to constitute reversible error."

This statement is quoted with approval in State v. Myers, 248 Iowa 44, 51, 79 N.W.2d 382.

Defendant's complaint is without merit.

II. In claimed errors numbered 3 and 4 defendant claims the county attorney asked a State witness improper and prejudicial questions and allowed a State witness to stray into a collateral issue.

Alan Holden, a young man employed by defendant as a truck driver, and an alleged accomplice, testified for the State. He was asked, "Now did you continue to work for Mr. Roberts?" He answered, "Yes, I worked for him for, oh, about two weeks or three weeks after that, at which time, Gerald Eveland, the Deputy Sheriff at Backus, came out and talked to my mother and said that they were quite sure that Mr. Roberts was in on this robbery and that he had done time before. And he, of course, wanted to know if I was working for him, and my mother called my dad up—."

At this point counsel for defendant objected and on motion the court struck the answer.

There was nothing objectionable in the question and the court promptly struck the answer. Any error in the rambling answer was promptly cured. See State v. Olson, 249 Iowa 536, 554, 86 N.W.2d 214.

■ Later in the same examination he was asked if he received any instructions from defendant on November 11, the morning after the burglary. He answered, "Just that I wasn't supposed to talk to anybody." He also related statements made by defendant as to consequences if they were caught and that the witness would go to the penitentiary. These statements were related as part of the admonition of defendant to the witness against talking to anyone. The evidence was admissible. Objections to other matters relating to life in the penitentiary and types of prisoners were sustained and the jury admonished to give such matters no consideration. Testimony as to efforts of defendant to dissuade an alleged accomplice from talking was admissible. That part of the examination that might be of questionable propriety was promptly withdrawn. There was no error. See State v. Olson, supra.

■ Louis Nelson, a confessed participant in the burglary and alleged accomplice of defendant, testified at length for the State. He related a long series of activities with defendant before, during and after November 10. At one place in his testimony he mentioned plans for another crime. The reference to another offense was apparently volunteered and not responsive, to any prompting by the prosecution. It was promptly and properly stricken and the jury admonished. There was no such prejudice as to be reversible error.

III. Forty exhibits were admitted in evidence. Thirty-eight of them were and are challenged by defendant as immaterial, irrelevant, without foundation, prejudicial, or testified about before admission.

■ The witnesses Holden and Nelson testified at length as to their activities with defendant before and after the burglary and the division and spending of the proceeds. The exhibits relate thereto. The exhibits include a Christmas card and envelope,

grocery order used for handwriting comparison, other handwriting samples, hotel registration records, car rental agreements, traffic summons, telephone records, Western Union records, photograph, photographic enlargement of handwriting specimens, airline records, garage work order, and stolen piggy banks.

Each exhibit was adequately identified and related to and corroborated some part of the stories told by accomplices. See State v. Jones, 233 Iowa 843, 849, 10 N.W.2d 526.

There was no error in the admission of the exhibits.

IV. Defendant attacks the court's instructions on the testimony of accomplices.

The record was not saved by exceptions in the trial court and claimed errors therein need not be reviewed on appeal. However, as we did in State v. Pullen, 252 Iowa 1324, 1327, 110 N.W.2d 328, we have considered the instructions. We do so without establishing any precedent to do so in the future. See also State v. Kramer, 252 Iowa 916, 109 N.W.2d 18.

[9] The court's instruction number 12 was as follows:

"You are instructed that under their own testimony the witnesses, Alan Dale Holden and Louis Mills Nelson, are what is known in law as accomplices. You are further instructed that under the law of this State a defendant cannot be convicted of a public offense upon the evidence of accomplices alone, unless their evidence is corroborated by other reliable evidence, or by facts and circumstances, proved, which tend to connect the defendant with the commission of the crime charged, if the same was committed, in such manner as tends to single or point out the defendant as the one who committed it. You are instructed that in this case the defendant, Earl Duane Roberts, cannot be convicted of the crime charged against him upon the evidence of Alan Dale Holden and Louis Mills Nelson alone, unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense charged; and such corroboration, if any, is not sufficient if it merely shows that the offense was committed, but it must be such as tends to connect the defendant with its commission, and such as tends to point and single out the defendant as the one who committed it."

The instruction met all of the requirements of section 782.5

Code of Iowa and was more complete than required for compliance with the statute. See State v. Kersberger, 195 Iowa 1066, 1071, 191 N.W. 872.

V. Defendant claims error in the instruction on the forms of verdict. No exception or issue relative thereto was ever raised in the trial court. The instructions carefully pointed out that nothing therein was intended to express any opinion as to the guilt or innocence of the defendant. The forms of verdict submitted were in no way coercive or suggestive. The complaint is without merit.

VI. Defendant contends that the court should have instructed the jury as to the purposes and weight to be given the various exhibits. To have instructed the jury as to the weight and credit to be given the evidence would have been error. It is the province of the jury to weigh the evidence if a jury issue is presented.

VII. Defendant claims error in that three exhibits not admitted in evidence were taken into the jury room. The record as to this is silent. The question is not properly before us. We observe, however, that there was no error in any event. The exhibits consisting of a Christmas card, an envelope and a specimen of handwriting had been identified and had been before the jury. No prejudice appears.

VIII. Defendant claims lack of corroboration. Corroboration of testimony of an accomplice is required by section 782.5, Code of Iowa.

In State v. Geier, 249 Iowa 475, 479, 87 N.W.2d 318, we said:

"This statute has been before this court many times. In construing it we have said that the corroboration need not be of every material fact testified to by an accomplice, but is sufficient if it can fairly be said that the accomplice is corroborated in some material fact legitimately tending to connect the defendant with commission of the offense." (Citations)

Here we have defendant's activities and association with the accomplices before and after the burglary traced in detail and corroborated. He was at the scene of the crime for no legitimate

reason. There was testimony as to his comments and actions during the robbery, his unconcern and nonchalance while being robbed and his jovial manner immediately thereafter.

 Whether there is corroborative testimony is a question of law, but its sufficiency is a question of fact for the jury. No general rule can be stated as to the quantum of evidence required. Each case must be governed by its own circumstances. State v. Gates, 246 Iowa 344, 351, 67 N.W.2d 579.

 Here the evidence was ample to generate a jury question and sufficient to support the jury verdict.

We have considered the entire record. The defendant had a fair trial. We find no ground for interference with the verdict of the jury.

The case is—Affirmed.

All JUSTICES concur.