STATE OF IOWA, appellee, v. GEORGE ALLEN FOX, appellant.

No. 51301.

(Reported in 131 N.W.2d 684)

DECEMBER 15, 1964.

Arthur J. Crawford, of Fort Dodge, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Francis E. Tierney, County Attorney, and Mark McCormick, Assistant County Attorney, both of Fort Dodge, for appellee.

LARSON, J.—The defendant, George Allen Fox, was indicted and tried for the crime of rape in violation of section 698.1, Code of Iowa, 1962. From a jury verdict of guilty and an imposed sentence of fifty years in the state penitentiary he appeals. There is no contention made that the evidence of this horrible crime was not sufficient to sustain the conviction.

The errors assigned, as we understand them, are (1) that inadmissible evidence was received of oral admissions of defendant made in the absence of counsel after arraignment, of a conversation regarding defendant's refusal to take a lie-detector test, and of admissions of other offenses not germane to the crime charged; (2) that the court erred in overruling defendant's motion to dismiss the indictment because of an admitted variance in the testimony of witnesses as given before the grand jury and as given in this trial; (3) that the court erred in overruling defendant's motion for a mistrial on the grounds that he was on one occasion denied access to his counsel between sessions of his trial. We find no merit in any of these assignments.

The details of this crime are so revolting that we shall refer only to them generally where necessary. For more than two hours prosecutrix, a slight girl of twenty years, battled three strong men before they succeeded in their unholy purpose. It appears the prosecuting witness and her steady boyfriend, Robert Christiansen, were parked in a narrow lane off the public highway north of Fort Dodge, Iowa, at about 1 a.m. on May 21, 1963. They were engaged in some unusual petting, and the girl had removed her clothing, when a car bearing the defendant and two other men, David Sexauer and Ronald Torrence, pulled into the lane and blocked their exit. All three men got out of their car and approached the Christiansen car. Noting the girl wrapped in a blanket, Fox and Sexauer, with drawn pistols, threatened to shoot unless Christiansen unlocked the car door. When he did so, Fox and Torrence dragged the girl from the car and laid her on the ground. After beating and pistol-whipping Christiansen, Sexauer joined in the attempt to ravish the girl. For about an hour they struggled without success, and then Fox laid her in the front seat of his car where she was subjected to additional abuses and indignities. Finally Fox succeeded in his

efforts, shouted to the others, and all three completed the act of sexual intercourse with the girl several times before Torrence, sickening of the affair, tried to stop defendant's animal behavior. A fight resulted and Torrence ran away. Fearing he had gone to the Fox farmhouse a quarter of a mile away for a gun, the defendant and Sexauer permitted Christiansen and the girl to leave. Threats were made if the police were informed, so Christiansen drove to the place he worked and called them. The police responded promptly and, after taking the girl to the station, rushed her to the hospital for examination and treatment.

 Her testimony as to the assault and some indignities was corroborated by Christiansen. The doctor told of his findings, of bruises and scratches on her body, of medical confirmation of recent sexual relations by force and violence, and the lady with whom she stayed told of a conversation with the girl over the phone and at the hospital when she was hysterical and distraught some two hours after the attack. All this was admissible evidence showing the girl was forcefully raped at gunpoint by the defendant, who she accurately described and later that morning identified at the police station. See State v. Torrence, 257 Iowa 182, 131 N.W.2d 808.

The State offered the testimony of several police officers and of Sheriff Ray McCoy concerning the detection and apprehension of these men at the Fox farm, which adjoined the lane involved. The pistols used by Fox and Sexauer were found and identified by the prosecuting witness and Christiansen. Captain William Lamb, of the Fort Dodge police, testified that he talked to the defendant shortly after he was brought in, but that he made no statement at that time, that he denied he was guilty, and that he called his attorney, Louie Beisser, who came right over and advised Fox that he did not have to talk to the officers more than to tell them his name. Lamb was present that morning when the girl identified Fox as the worst of the three who had raped her.

 I. After Fox waived to the grand jury he was removed to the county jail where a conversation between Fox and Captain Lamb took place in the presence of Sheriff McCoy. McCoy, testifying for the State, said that when Lamb asked Fox, "Will you tell the sheriff and me how you got loused up in a deal

like this", Fox never did "come out with an answer", but he said "while we were talking he [Fox] did admit being on top of this girl. Well, he said that he never did have intercourse with her, he was trying to, but he didn't get the job done." There was no objection made to this testimony, although it is now claimed evidence of that admission was inadmissible. Clearly, these statements of the defendant were voluntary. There is no claim they were obtained as a result of coercion or when access to his counsel was denied him.

While evidence of statements obtained by force or duress is not admissible, we have often said, "The sole test in this state as to the admissibility of inculpatory statements or confessions is: Were the same voluntary or not?" State v. Stump, 254 Iowa 1181, 1191, 119 N.W.2d 210; State v. Beltz, 225 Iowa 155, 163, 279 N.W. 386, 390; State v. Mikesh, 227 Iowa 640, 644, 288 N.W. 606. It is clear Fox was not denied the aid of counsel at anytime prior to trial, that he was aware of his rights, and that these admissions were not obtained by force or duress.

The rule is well settled that one accused of a crime may refuse to answer questions of the police, and, before doing so, is entitled to advice of counsel. These safeguards of one's rights appear in both Federal and State Constitutions. Amendments 5, 6 and 14, Constitution of the United States; Article I, sections 9 and 10, Constitution of the State of Iowa. The courts have recognized these safeguards and interpreted them. State v. Stump, supra; Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933; Escobedo v. Illinois, 378 U. S. 478, 84A S. Ct. 1758, 12 L. Ed.2d 977, decided June 22, 1964. It appears from the Escobedo case that each case must turn largely upon its own facts, but we are sure there is no departure in that case from our rule that evidence as to purely voluntary statements made by one accused of a crime, otherwise material, is admissible. True, the latest Supreme Court pronouncement in the Escobedo case perhaps leaves one with the thought that any evidence of a statement made by one accused either before or after arraignment, not made in the presence of counsel, is inadmissible (see dissent therein), but we are satisfied the holding in that case was predicated upon those facts which

disclosed a police interrogation of the accused when his attorney was being excluded and was unable to advise him. There are no such circumstances here, and we think the testimony as to Fox's admission was properly accepted, especially so where no objection to it appears in the record.

Defendant himself first testified regarding a proposed lie-detector test and as to other crimes committed by him, not related to the crime charged. He admitted on his direct examination a California conviction for larceny, and told of their activities the night of May 20 when he said they drove around and "went up around Badger" and stopped at a vacant place. On cross-examination he admitted they stole some building materials at that place. He said, "I picked it up outside. I stole, I picked up this merchandise outside * * *." He also volunteered the theft at a camping trailer, and said, "We went in, took two mattresses, two single bed mattresses out of it." There was also no objection made to these questions or answers on cross-examination, and no effort was made to strike them out.

 It is the rebuttal testimony given by Captain Lamb and Sheriff McCoy on these matters that defendant thinks was inadmissible. Officer Lamb denied he refused defendant a lie-detector test at the time he was held in the city jail, and verified the admission Sheriff McCoy related. Sheriff McCoy, on rebuttal, said that at the instance of the county attorney he did offer defendant such a test about a week before the trial and that defendant rejected the offer. While it is true we held in State v. Green, 254 Iowa 1379, 1384, 121 N.W.2d 89, 95 A. L. R.2d 810, that reference to an agreement to take a lie-detector test, followed by a failure to do so, was prejudicial and reversible error, the court was sharply divided on this issue and four able judges dissented as to it. In any event, we hold the rebuttal testimony on the matters first raised by defendant as to this offer and refusal was not erroneously admitted here. The same is true as to the testimony relating to the articles stolen before the rape. The rebuttal related only to evidence received without objection in defendant's own testimony, and while it may not have been admissible had objection been made originally, there was no such prejudice to defendant as would require reversal for having ad-

mitted testimony thereon in rebuttal. As bearing on this matter, see State v. Rutledge, 243 Iowa 179, 47 N.W.2d 251, and 243 Iowa 201, 50 N.W.2d 801; State v. Mauch, 236 Iowa 217, 17 N.W.2d 536; State v. Kramer, 252 Iowa 916, 109 N.W.2d 18; State v. Walters, 244 Iowa 1253, 58 N.W.2d 4; State v. Holoubek, 246 Iowa 109, 66 N.W.2d 861.

██ II. We have repeatedly held that an indictment can be set aside only on grounds enumerated in the statute. State v. Boucher, 237 Iowa 772, 23 N.W.2d 851, and authorities cited therein. Section 776.1, Code, 1962, sets out seven grounds upon which a motion to dismiss must be sustained if made before a plea is entered. None applies here. Section 773.6, Code, 1962, also states grounds for setting aside an indictment, but defendant does not claim them applicable. He does claim the inconsistent testimony of the girl and Christiansen as to where they were parked and the state of the girl's dress or undress was so material as to be grounds for his motion to dismiss the indictment. He contends somehow he was taken by surprise by the prosecution's changed testimony as to those matters, and cites sections 780.3 and 780.10 of the 1962 Code as setting out his rights in such matters.

Section 780.3 refers to time to prepare for trial and is not applicable. Section 780.10 provides for notice of additional testimony and requires at least four days' notice thereof before the commencement of the trial. It also is not applicable here.

The girl and her escort originally told the police and testified before the grand jury that they were parked on the highway, a short distance from the lane where the attack took place, and stated that the girl was clothed. Their original story, given to save them embarrassment, was that at gunpoint these men forced Christiansen to drive in the lane and forced the girl to disrobe. These untruths and the true facts were disclosed by the girl and Christiansen in their direct examination, and the truth of these statements is not disputed. In fact, their testimony at the trial on these particulars was in accord with defendant's own testimony. The elements of an actual surprise are lacking.

We are satisfied the falsity in this prior testimony did not relate to any material matter in controversy. The variance of

the testimony did not substantially change the place of the crime, as both spots were within Webster County, and certainly the state of the girl's dress had no effect on the elements of the crime charged. Furthermore, it was undisputed that she was wrapped in a blanket when she was dragged from Christiansen's car. Nothing appears in this record which would tend to show a need for more time by this change in the State's testimony, and we find no prejudice to defendant by that change.

We held in State v. Lamb, 239 Iowa 176, 181, 30 N.W.2d 734, that a motion to set aside an indictment made after plea of not guilty has been made, without withdrawing said plea, should be denied as not timely made.

While these discrepancies might have had some relevancy as to the witnesses' credibility, we are satisfied that as to the error alleged it could not be grounds for setting aside the indictment, and the court correctly denied the motion.

III. Appellant's final complaint requires little consideration and is of no merit. It is his claim that the court erred in denying his motion for a mistrial because the sheriff refused counsel permission to visit with defendant on the evening of September 10, 1963, while the trial was in progress. It appeared the sheriff had sent defendant's clothing out to be cleaned and did not deem it safe to allow counsel to come to the jail after 7:30 p.m. He advised counsel he could come at eight o'clock the next morning for his consultation prior to the court session at 9:30 a.m.

It may or may not have been a proper decision of the sheriff or county attorney, but there is absolutely no showing of prejudice thereby to defendant. Counsel could have obtained a writ of habeas corpus, or in some other manner called the matter to the court's attention if the need was urgent. Apparently it was not, for no request was made for more time for consultation the next morning before court convened. No such request was made, and without making a record showing he was denied time to consult or prepare for the next morning's session, he moved for a mistrial. His motion then was at least premature. Furthermore, it is not shown nor evident that this ruling caused defendant to change his trial plans or his defense in anyway.

The trial court, of course, has considerable discretion in passing upon motions for mistrial and, unless it clearly appears such discretion has been abused, its ruling must stand. We find no prejudice was suffered by defendant by the action of refusing a client-counsel conference under these circumstances.

IV. Having found no reversible error, the judgment and sentence of the trial court must be affirmed.—Affirmed.

All Justices concur.