STATE of Iowa, Appellee,

v.

Dick Charles WRIGHT, Appellant.

No. 55253.

Supreme Court of Iowa.

Dec. 20, 1972.

Joseph Z. Marks, Des Moines, and Stanley Lamfers, Chariton, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and William L. Shelton, County Atty., for appellee.

Heard before MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

McCORMICK, Justice.

Defendant was convicted by jury and sentenced for statutory rape under Code §

698.1. He claims trial court erred in finding sufficient corroboration to submit the case to the jury and in overruling his motions for mistrial and new trial based upon alleged prosecutor misconduct. We find there was sufficient corroboration but agree defendant was denied a fair trial by prosecutor misconduct and reverse and remand.

The State charged defendant committed statutory rape upon his 16 year-old stepdaughter Judy Carter at their home in Derby, Lucas County, on or about December 3, 1970. The incident was purportedly the last in a series of similar acts with Judy over a two-year period.

Defendant had married Judy's mother in 1961. He had two children by prior marriage and she had five. They had one child during their marriage. At the time involved, seven of the children were living with them. The State's evidence showed that three of the children, Judy, her sister Diane, age 9 at trial, and her stepsister Patricia Wright (defendant's daughter), age 15 at trial, shared a bedroom. Diane and Patricia slept in a double bed, and Judy slept in a small bed nearby.

Judy testified the offense occurred in this bedroom at about 1:00 a.m. December 3, 1970, when defendant entered the room in his underclothing and got in bed with her as he had on prior occasions. Patricia, defendant's daughter, testified she occasionally saw defendant get into Judy's bed during the night including on or about the date involved. Her testimony as to what she then saw and heard is consistent with Judy's version of what happened.

I. *Sufficiency of corroboration.*
Section 782.4, The Code, provides:

"The defendant in a prosecution for rape * * * cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense."

The standards governing determination of sufficiency of corroboration are discussed in State v. Lahmon, 231 Iowa 448, 1 N.W. 2d 629 (1942) (opinion on rehearing). Applying the statute in this case, we find ample corroborating evidence, especially in Patricia Wright's purported eyewitness testimony. Trial court did not err in letting the jury pass upon its weight and probative force.

II. *Prosecutor misconduct.* The gist of defendant's claim of prosecutor misconduct is that the county attorney persistently sought to inject irrelevant, incompetent and prejudicial evidence into the case despite adverse trial court rulings. He contends that even though his objections to improper questions were usually sustained, the combined effect of the prosecutor's tactics was to establish by indirection what he could not show directly, and that defendant was thereby deprived of a fair trial.

We believe the county attorney's effort to elicit testimony concerning defendant's alleged lascivious conduct toward Patricia Wright is decisive.

The sequence of trial events is significant on this issue. Trial court and county attorney were both alerted to defendant's objection to any evidence of defendant's alleged lascivious behavior with his own daughter by motion in limine. Trial court overruled the motion stating it would rule on admissibility of the evidence upon objection to its relevancy and materiality when offered during trial. The county attorney made it clear he intended to offer the evidence on a theory it was "corroboration."

Judy Carter was the State's first witness. When asked what defendant had done to "bother her" in the kitchen of the home, she volunteered that he took liberties with Patricia and her while the girls were doing dishes. No objection or motion to strike appears. The subject was changed, but later in direct examination she was

asked, "Did you ever observe Mr. Wright do anything to Patty Wright other than what you have referred to already?" This was objected to as irrelevant and immaterial and objection was sustained. The subject was not further pursued with Judy.

The next witness was Patricia Wright. She described defendant's occasional nocturnal visits to Judy's bed, including the claimed incident on or about December 3, 1970. Then this occurred:

"Q. Now, on any of these occasions that your father came into the bedroom at night, please state whether or not he got in bed with you?

"MR. MARKS: I object to that question as immaterial and irrelevant to any of the issues in this lawsuit.

"THE COURT: The objection is sustained.

"COUNTY ATTORNEY: Your Honor, it is the State's position this is part of the integral transaction. I don't think we can show the whole picture here.

"THE COURT: The objection will be sustained.

"Q. Did your father ever place his hands on your breasts or other personal parts of your body?

"MR. MARKS: That is objected to as immaterial and irrelevant and highly prejudicial.

"THE COURT: The objection will be sustained. Counsel is advised it is the Court's position the conduct of the defendant towards his own daughter is immaterial in the trial of this particular case and beyond the issue."

Thereupon, out of the presence of the jury, defendant moved for mistrial. The State made an offer of proof only as to the mistrial and the county attorney said, "We are not challenging the court's ruling on the motion." In the offer of proof Patricia said her father had on other occasions gotten in bed with her and fondled her. These were different nights than those during which she claimed Judy was visited. The court's ruling stood, the motion for mistrial was overruled and trial resumed.

James Lee Carter later testified for the State. During his testimony he was asked the ages of Judy and Patricia. Then:

"Q. During the period of time you lived in the home with your stepfather and these girls did you see your stepfather place his hands on any part of their body? A. Yes.

"MR. MARKS: This is objected to as leading and suggestive and includes matters which are immaterial and irrelevant to any issue in this case.

"THE COURT: The objection will be sustained. The question is too broad. It refers to the acts of more than one person, more than the person of Judy."

Later in his testimony he described red marks on Judy's neck he said were caused by defendant's kissing. Then the record shows the following:

"Q. Did you see any on Patricia? A. A couple.

"MR. MARKS: Your Honor, I would like to get this objection in ahead of the question and answer, it is entirely irrelevant.

"THE COURT: The objection is late. Overruled. There was a pause there.

"MR. MARKS: I was in the process of making objection to the question.

"THE COURT: He made his answer and the ruling will stand.

"Q. Please state whether or not you also saw this sort of activity in regard to Patricia as far as hands on her breasts?

"MR. MARKS: Your Honor, this is objected to as immaterial and irrelevant.

"THE COURT: The objection will be sustained."

Based upon this record the second motion for mistrial was made and overruled. Trial was completed and the case submitted to the jury.

During jury deliberations, when the jury had been called back to the courtroom prior to overnight recess, a juror addressed the court:

"Your Honor, I am foreman of the jury, and this may be out of order, the jury has the feeling evidence has been withheld by both sides and we would like to have that evidence. Because of the lack of that evidence we feel we cannot decide the case."

The court responded:

"The subject of this lawsuit has been presented to you from the witness stand and the law has been given you in written form through the instructions. As jurors, you must decide the case on the evidence which has been introduced from the witness stand and the instructions of the Court. That is the only answer I can give you."

When deliberations were resumed, defendant was found guilty. Prosecutor misconduct was urged as a ground for new trial, but the motion was overruled. With that background, we turn to the law.

Defense counsel properly alerted trial court to the issue involved and his claim of prejudice by the motion in limine:

"The primary purpose of a motion in limine is to avoid disclosing to the jury prejudicial matters which may compel declaring a mistrial. The trial judge is thereby alerted to an evidentiary problem which may develop in the trial. It should not, except upon a clear showing, be used to reject evidence. *Careful procedure dictates the trial court's order on a motion in limine should prohibit disclosure of questionable evidence until the court during trial in the jury's absence has been presented an offer and objec-*

*tion.* Thus a proper record may be made for review on appeal. [citations] State v. Johnson, 183 N.W.2d 194, 197 (Iowa 1971) (emphasis supplied).

In accordance with the italicized statement, the problem in this case could have been avoided had the county attorney been instructed at the time of the ruling upon the motion in limine that evidence of defendant's alleged misconduct with his daughter should first be offered in the jury's absence.

As it turned out, the prosecutor attempted to offer the evidence six times in the jury's presence, five of the attempts occurring after trial court sustained an objection that it was irrelevant and immaterial and three of them after the first motion for mistrial.

The State did not claim at trial nor does it claim now that trial court erred in excluding the evidence. We will, however, consider the question because it bears upon whether defendant was prejudiced by the efforts to get it before the jury. We have long held, subject to well-circumscribed exceptions, that the State cannot prove against a defendant any crime for which he is not being tried, either as a foundation for separate punishment or as aiding the proof in the case being tried. State v. Armstrong, 183 N.W.2d 205, 207 (Iowa 1971).

■ Here, the county attorney first claimed the evidence would be offered as "corroboration" of the crime charged. This is not a recognized exception permitting its use. It would be corroboration only in the sense of proving defendant's alleged criminal character and thus that he was more likely to have committed the crime. This is exactly why it may not be introduced. State v. Wright, 191 N.W.2d 638, 641 (Iowa 1971); C. McCormick, Evidence § 190 at 447 (Second Ed. 1972). A defendant must be convicted only if it is proved he committed the offense charged and not because he is a bad man.

■ The county attorney later claimed the evidence was admissible within the exception permitting proof of separate offenses where they are an integral transaction. However, that exception is applicable only where the separate offenses are so related to each other that proof of one tends to establish the other. State v. Wright, *supra*; 29 Am.Jur.2d Evidence § 326. The State failed utterly to prove that relationship here.

■ It is generally held that on a charge of statutory rape evidence of lascivious conduct with girls other than prosecutrix is inadmissible unless essential to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. People v. Greeley, 14 Ill.2d 428, 152 N.E.2d 825 (1958); Landon v. State, 77 Okl.Cr. 190, 140 P.2d 242 (1943); State v. Pace, 187 Or. 498, 212 P.2d 755 (1949); State v. Williams, 36 Utah 273, 103 P. 250 (1909); C. McCormick, Evidence § 190 at 449 (Second Ed. 1972); 1 Underhill, Criminal Evidence § 211 at 340 of 1970 supp. (Fifth Ed. 1956); annot. 77 A.L.R.2d 841, 859 et seq. We subscribe to the general rule. State v. Neifert, 206 Iowa 384, 220 N.W. 32 (1928); see also State v. Leuty, 247 Iowa 251, 73 N.W.2d 64 (1955); cf. State v. Schlak, 253 Iowa 113, 111 N.W.2d 289 (1961).

Even when an exception is applicable to establish relevancy the trial court has discretion to determine admissibility. State v. Armstrong, *supra*, 183 N.W.2d at 208. Probative value is balanced against possible prejudice:

> "The leeway of discretion * * * [empowers] the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational· consideration of guilt or innocence of the crime on trial." C. McCormick, Evidence § 190 at 453–454 (Second Ed. 1972).

Exercise of trial court discretion therefore goes beyond the question of categorical classification to a determination whether the "minute peg of relevancy will be entirely obscured by the dirty ·linen hung upon it.". State v. Goebel, 36 Wash.2d 367, 379, 218 P.2d 300, 306 (1950).

Thus, even if the evidence could have been brought within some recognized exception, trial court had discretion to exclude it. In this case there is no basis for holding violation of the court's rulings nonprejudicial by finding trial court erred in excluding the evidence.

■ Of course, a trial court also has broad discretion to decide whether prosecutor misconduct is sufficient to deprive a defendant of a fair trial, and we interfere only when that discretion has been abused. State v. Horsey, 180 N.W.2d 459, 461 (Iowa 1970). Here we believe trial court did exceed its discretion in overruling defendant's motions for mistrial and new trial. It is difficult to imagine anything more inflammatory and corrosive of a defendant's presumption of innocence in a trial for statutory rape of his stepdaughter than an insinuation, no matter how well-intentioned, that he is also guilty of incestuous behavior with his own daughter.

The prosecutor's innuendos obviously were calculated to and did have some prejudicial impact upon the jury, as manifested by the jury's concern about "withheld evidence" during its deliberations. The State and defendant are equally entitled to a fair trial. It is essential to our adversary system that trials be vigorously prosecuted and vigorously defended but within the bounds of proper legal procedure. If a prosecutor's blows become foul rather than merely hard, a defendant may thereby be denied procedural fairness. State v. Levy, 160 N.W.2d 460 (Iowa 1968), and citations.

The county attorney's conduct in this case deprived defendant of a fair trial. He is entitled to a new day in court.

Reversed and remanded.