**STATE of Iowa, Appellee,**

v.

**Fred Douglas WARE, Appellant.**

**No. 55441.**

Supreme Court of Iowa.

March 28, 1973.

Raymond J. Gazzo, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., and Ray Fenton, County Atty., for appellee.

RAWLINGS, Justice.

Defendant, Fred Douglas Ware, appeals from judgment on jury verdict finding him guilty of going armed with intent to use a dangerous weapon in violation of The Code 1971, Section 695.1. We reverse.

Evidence admitted in course of trial discloses Ware was arrested, handcuffed and placed in a squad car about three blocks east of Travelodge Motel in Des Moines by police officers Robert Louis Booth and Ronald Foster.

Booth first testified to the effect he advised Ware regarding his so-called Miranda rights, and thereafter defendant stated he and two others intended to rob the motel.

Foster initially corroborated Booth. Cross-examination of this witness disclosed, however, before Ware made the aforesaid incriminating statement Booth had said to defendant "it would go easier if he wanted to tell us anything."

In absence of the jury trial court sustained defense counsel's motion to strike any admissions or statements made by Ware to the arresting officers because of Foster's testimony, *supra*. Subsequently the jury was given this oral admonition:

"[I]n your absence the Court has heard some additional argument in connection with the circumstances surrounding the alleged making by the defendant of a

statement to Officers Booth and Foster at the time or shortly after the defendant was taken into custody by these officers, said statement allegedly being to the effect that the defendant and a couple of other men intended to rob the Travelodge.

"Now, on the basis of the circumstances surrounding the making of the alleged statement, defense counsel has moved to strike from the record that statement alleged to have been made by the defendant, and the Court has sustained the motion.

"Therefore, the statement, that statement, claimed to have been made by the defendant, has been stricken from the record. It is no longer a part of the record in the case and the Court is asking the jury to disregard that statement entirely. It's not before you."

The State's case in chief was thereupon closed and defendant's motion for a directed verdict overruled. Immediately thereafter Ware's attorney moved for a mistrial. He supportively urged the erroneous introduction in evidence of defendant's admission to Booth and Foster was "so highly prejudicial that it cannot be erased from the memory of the jurors merely by admonishing them that they are not to consider those admissions in making determinations of his guilt."

As previously stated the jury returned a guilty verdict. Defendant subsequently moved for a new trial. He thereby urged the impermissible admission in evidence of the aforesaid confessionary statement was so implanted that it unavoidably contributed to the jury verdict, thus creating prejudicial error of constitutional dimensions. This motion was overruled and judgment entered.

The basic issue here presented is whether trial court committed reversible error in overruling defendant's motion for a mistrial order and in the same vein by overruling his new trial motion.

■ I. At the threshold it is understood trial courts generally have considerable discretion in passing on mistrial motions. See State v. Fox, 257 Iowa 174, 182, 131 N.W.2d 684 (1964).

That prerogative is not, however, without limitation. It must be exercised fairly and impartially by application of relevant guiding principles to all known or available facts to the end that justice be more nearly effectuated. See Thornberry v. State Board of Regents, 186 N.W.2d 154, 161 (Iowa 1971); Jones v. Iowa State Highway Commission, 185 N.W.2d 746, 749 (Iowa 1971).

■ II. Additionally, a mistrial motion must be made when the grounds therefor first become apparent. See State v. Boose, 202 N.W.2d 368, 369 (Iowa 1972); State v. Johnson, 260 Iowa 1207, 1218, 152 N.W. 2d 426 (1967). See generally Henry v. Mississippi, 379 U.S. 443, 448–449, 85 S.Ct. 564, 567–568, 13 L.Ed.2d 408 (1965); Brady v. Maryland, 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963); Annot. 34 A.L.R.3d 16; cf. State v. Binkley, 201 N.W.2d 917, 919 (Iowa 1972).

■ On this subject the record discloses it was the second day of trial, while officer Foster was being cross-examined, that the manner by which defendant's inculpatory statement was elicited first became known. It was thus revealed that when defense counsel attempted to ascertain, by further cross-examination of Foster, the meaning of Booth's confession-inducing-comment, *supra,* the prosecution objected. In camera proceedings followed. Trial court there declared: "[W]e don't need to waste any more time on this. If the defense counsel wants to move to strike the testimony as to the alleged admissions of the defendant, the Court is going to sustain the motion."

Defendant's attorney promptly voiced the invited motion to strike. Trial judge responded: "Well, all right, let's go ahead and get it finished up."

Court then reconvened and the above quoted exclusionary instruction was given by trial judge to the jury.

That done court stood recessed and defense counsel at once interposed his mistrial motion.

Under these circumstances there is no basis upon which to fairly hold the instant motion was not timely made.

III. The problem next presented is whether defendant's statement to policemen Booth and Foster was voluntarily made. This, in turn, places upon us the responsibility to independently examine and evaluate the record in light of contemporary standards. See Miranda v. Arizona, 384 U.S. 436, 463–464, n. 33, 86 S.Ct. 1602, 1622, n. 33, 16 L.Ed.2d 694 (1966); Haynes v. Washington, 373 U.S. 503, 515–517, 83 S.Ct. 1336, 1344–1345, 10 L.Ed.2d 513 (1963); Lynumn v. Illinois, 372 U.S. 528, 536–537, 83 S.Ct. 917, 921–922, 9 L. Ed.2d 922 (1963); Napue v. People of Illinois, 360 U.S. 264, 271–272, 79 S.Ct. 1173, 1178–1179, 3 L.Ed.2d 1217 (1959); Spano v. People of New York, 360 U.S. 315, 315–316, 79 S.Ct. 1202, 1203, 3 L.Ed.2d 1265 (1959); Payne v. Arkansas, 356 U.S. 560, 561–562, 78 S.Ct. 844, 846–847, 2 L.Ed.2d 975 (1958). See also Code § 793.18.

■ It is well established, "The use in a state criminal trial of a defendant's confession obtained by coercion—whether physical or mental—is forbidden by the Fourteenth Amendment." Payne v. Arkansas, 356 U.S. at 561, 78 S.Ct. at 847. See Rogers v. Richmond, 365 U.S. 534, 540–546, 81 S.Ct. 735, 739–742, 5 L.Ed.2d 760 (1961); Blackburn v. Alabama, 361 U.S. 199, 205–208, 80 S.Ct. 274, 279–280, 4 L. Ed.2d 242 (1960); cf. Davis v. Mississippi, 394 U.S. 721, 723–724, 89 S.Ct. 1394, 1396, 22 L.Ed.2d 676 (1969).

■ Furthermore, we are satisfied the aforesaid "not so subtle" promissory leniency expressed by officers Booth and Foster induced the then frightened defendant to incriminate himself. See State v. Jay, 116 Iowa 264, 265–267, 89 N.W. 1070 (1902). In other words it cannot be said defendant's statement was the product of a "rational intellect and free will". See Malloy v. Hogan, 378 U.S. 1, 6–10, 84 S.Ct. 1489, 1492–1494, 12 L.Ed.2d 653 (1964); Lynumn v. Illinois, 372 U.S. at 534–536, 83 S.Ct. at 920–921; Spano v. People of New York, 360 U.S. at 320–325, 79 S.Ct. at 1205–1208; 29 Am.Jur.2d, Evidence, § 563.

As the court stated in Brady v. United States, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471–1472, 25 L.Ed.2d 747 (1970):

"Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), held that the admissibility of a confession depended upon whether it was compelled within the meaning of the Fifth Amendment. To be admissible, a confession must be ' "free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." ' 168 U.S., at 542–543, 18 S.Ct., at 187. More recently, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), carried forward the *Bram* definition of compulsion in the course of holding applicable to the States the Fifth Amendment privilege against compelled self-incrimination."

See State v. Mullin, 249 Iowa 10, 85 N.W. 2d 598 (1957); People v. Brommel, 56 Cal.2d 629, 15 Cal.Rptr. 909, 364 P.2d 845 (1961); Kier v. State, 213 Md. 556, 132 A.2d 494 (1957); State v. Biron, 266 Minn. 272, 123 N.W.2d 392 (1963); State v. Watson, 82 N.M. 769, 487 P.2d 197 (1971); State v. Hoyt, 21 Wis.2d 284, 124 N.W.2d 47 (1963).

We now hold Ware's incriminating statement was impermissibly induced. Therefore its admission in evidence served to deny defendant due process of law. By the same token he was not accorded a fair trial. See Spencer v. Texas, 385 U.S. 554,

563–564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967); Code § 793.18.

IV. But the State argues, even if there be such error as above noted it was corrected by trial court's exclusionary admonition. It would thus appear an attempt is, in effect, here made to invoke the "harmless error" concept.

■ In State v. Coffee, 182 N.W.2d 390, 392 (Iowa 1970), we did say:

"If evidence is improperly admitted but is later withdrawn with a cautionary statement to the jury to disregard it, there is no error except in extreme instances where the prejudicial effect would probably remain to influence the verdict despite its exclusion."

There is no reason to argue with that statement. Briefly stated it touches upon but does not, per se, resolve the question of constitutional dimension here posed.

As indicated above our task is to determine whether the constitutionally proscribed evidential use of a defendant's confession or admission was dispelled by giving to the jury an oral in-course-of-trial ejaculatory instruction.

One of the more recent cases dealing with that subject is United States v. Carney, 461 F.2d 465 (3d Cir. 1972), where, at 467–468, the court said:

"The appropriate tests in determining whether this so-called 'harmless error' rule is to be applied are set forth in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946):

" 'If, when all is said and done, the conviction is sure [sic] that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, supra [308 U.S. 287], at 294 [60 S.Ct. 198, 84 L.Ed. 257]. But if one cannot say, with

fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by error. It is rather even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' Id. [328 U.S.] at 764–765, 66 S.Ct. at 1248.

"A jury is ordinarily assumed to follow clear instructions from the trial judge. Spencer v. Texas, 385 U.S. 554, 562–563, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Michelson v. United States, 335 U.S. 469, 485, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Where, however, potential prejudice is such that there is inherent danger that jurors, in determining the issues, may be unable or unwilling to erase from their minds that which has improperly come to their attention, no instructions or admonitions by the trial judge will suffice. The only appropriate remedy in such a situation is to declare a mistrial. Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663 (1901); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967)."

■ Earlier Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967), announced some types of constitutional error may be harmless. In those instances, however, the error must be harmless beyond a reasonable doubt *and* the state must show it did not contribute to the conviction. More importantly *Chapman* clearly indicates certain types of constitutional error require an automatic reversal. Included are involuntary confession, right to counsel and an impartial presiding judge. See Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284

(1969). See generally 83 Harv.L.Rev. 814 (1970).

Later the court analogously stated in Burgett v. Texas, 389 U.S. at 115, 88 S.Ct. at 262:

> "The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' within the meaning of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.'"

See Spencer v. Texas, 385 U.S. at 575, 87 S.Ct. at 659–660; exhaustive dissent by Traynor, C. J., in People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 615–622 (1967).

And in Payne v. Arkansas, 356 U.S. at 568, 78 S.Ct. at 850, is found this apt statement:

> "[W]here, as here, a coerced confession constitutes a part of the evidence before the jury and a general verdict is returned, no one can say what credit and weight the jury gave to the confession. * * * even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment."

See also Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); Lynumn v. Illinois, 372 U.S. at 537–538, 83 S.Ct. at 922; Spano v. People of New York, 360 U.S. at 324, 79 S.Ct. at 1208.

Our review of the record discloses the identification evidence, separate and apart from defendant's induced incriminating statement, instantly falls far short of being so great and convincing as to be deemed overwhelming. We now hold the instant error was not harmless beyond a reasonable doubt. Moreover, prejudice inherent in the constitutionally proscribed evidential display of defendant's inculpatory statement was not dissipated by trial court's request that the jury disregard it.

Resultantly, trial court erred in denying defendant's motion for mistrial and in turn by overruling his motion for a new trial.

Under the circumstances there is no alternative but to reverse and remand for a new trial. Accord, State v. Moon, 183 N. W.2d 644, 649 (Iowa 1971).

Reversed and remanded for a new trial.