**STATE of Iowa, Appellee,**

v.

**William Walter CAGE, Appellant.**

**No. 56778.**

Supreme Court of Iowa.

May 22, 1974.

Rehearing Denied June 24, 1974.

Fulton, Frerichs, Nutting & Kennedy, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Stephen T. Moore, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

UHLENHOPP, Justice.

This appeal involves problems which arose during the trial of a prosecution for possession of heroin with intent to deliver.

Viewing the evidence in the light most favorable to the verdict, the jury could find that defendant William Walter Cage was a heroin user and had heroin in his possession on former occasions. He previously resided in Waterloo, Iowa, but moved to Cedar Rapids. At the time of the events involved here, however, he was again living in Waterloo, but only temporarily.

Larry J. Dolan was captain of the Waterloo police department narcotics division. On July 13, 1973, a confidential informant told Dolan that defendant sold him heroin that day at defendant's Waterloo home and that informant saw a quantity of heroin in defendant's possession there. This informant had previously furnished Dolan reliable information on at least a dozen occasions. On July 14, 1973, Dolan obtained a warrant to search defendant's home, car, and person. On July 15, 1973, a second confidential informant told Dolan that he saw defendant sell heroin to several persons on the street in Waterloo the previous evening. A third confidential informant told Dolan that on the morning of July 16, 1973, he saw defendant with a quantity of heroin at defendant's Waterloo home. The second and third informants had provided

Dolan reliable information on a number of previous occasions.

Narcotics officers placed defendant under surveillance. On the evening of July 16, 1973, defendant and his wife went to the home of Jennifer Franklin, where they smoked marijuana with her. At 9:30 p. m. those three individuals emerged from the house and entered a car which belonged to Mrs. Franklin's mother. Mrs. Franklin drove, Mrs. Cage sat in the middle of the front seat, and defendant sat on the right side with his left arm on the upper back of the front seat. The surveillance officers radioed Captain Dolan who, with those officers, converged on the Franklin car.

Mrs. Franklin stopped. At trial she testified she did not previously know that defendant had heroin with him, but when the officers stopped her, "Cage leaned over like so and put his hand down like this. I knew right away what was going on, you know. What called my attention to that particular movement was when he raised got ready and put his hand in his pocket. . . . All of us were completely baffled and shocked. He did like so. Maybe shouldn't say this, but I knew right away what was going on, you know. He made his move to say if so throw it out the window."

Detective Harry Helgesen rushed to the left front door and detective William J. Hermansen rushed to the right front door of the Franklin car. Hermansen had defendant and defendant's wife alight from the car. Defendant was advised that the officers had a warrant in their possession. Dolan searched defendant and found a syringe, a needle, a spoon, and a roll of money and some change amounting to $204.60, but no heroin. Meantime Helgesen had Mrs. Franklin get out on the left side of the car. He searched her but found nothing. He entered the car and found two and a half marijuana cigarettes, a marijuana roach (butt), and two seeds.

Dolan called for a police car, which soon arrived. Hermansen then went to the right side of the Franklin car to close the door. He testified at trial:

As I went around to the side of the car I shined my black light around the outside of the car and I looked down as I went to shut the door. I saw a reflection of a gold something, a gold box. The car door would be open like this. This is the front seat of the car. Right about here in the middle of the seat you got running boards here and the seat. There is small cars a little slot underneath just between the running board and the seat's base about this much. Right in there is where this gold box was laying. . . . I then reached down and picked up the gold box. Exhibit "A" is the gold snuff box the same one I saw that night. The box was sort of half leaning. It was open just a bit like this and one foil was laying outside of it. If the car had moved, it would have fallen over. It was in that position. I picked up the foil and put it back inside and looking at the contents I put it in my pocket. I showed it to Captain Dolan. I kept it in my possession until I got to the police station. Along with Captain Dolan we then examined it there. There were 15 foils inside.

The foils contained white powder. On subsequent analysis, the powder proved to be heroin.

The county attorney charged defendant with possession of heroin with intent to deliver. Defendant pleaded not guilty and stood trial.

The parties selected a jury and the prosecutor read the information to the jury. The trial court then excused the jury and defendant made a motion to strike certain minutes of testimony and to suppress the physical evidence. The trial court held a hearing on the motion. The court then overruled the motion and stated in a calendar entry that a written opinion would be filed at a later date. (After the trial, the trial court did file a written opinion, stating its reasons for overruling the motion.)

The trial took some time; seven witnesses testified for the State. About halfway through the testimony, the physical evidence was identified and offered in evidence. Defendant made no objection to the physical evidence except for exhibit B, which was the part of the heroin that was analyzed. Defendant objected that there was a break in the chain of possession of exhibit B, hence no proper foundation. Then this transpired:

The Court: That has to do with "B"?

Mr. Dunbar [defendant's trial attorney]: Yes.

The Court: And your objection to "A" [the gold box]?

Mr. Dunbar: Nothing.

The court overruled the objection to exhibit B, and defendant does not now contend that the objection he made was good.

Also during reception of the State's evidence, the prosecutor called Mrs. Franklin as a witness. She testified she had known defendant for a long time and also related the events of the evening. Her testimony about those events prior to the car ride included the following activities of herself, defendant, and his wife at Mrs. Franklin's house:

I then sat down in the black reclining chair and they sat on the couch. . . . The first thing you say Do you want to get high, and they said Yeah. I had some reefers of my own and was watching television. When I speak of reefers I speak of marijuana. I rolled the cigarettes myself. Getting high means smoke a joint. This is all I do, you know, and we all sat around and smoked. . . .

The record continues:

Q. Did all three of you smoke? A. All three of us. Mr. Cage had his own glass of juice, either pop or something else. He was on one side. I have two living rooms. He was on one side and I was on the other and his lady and I we sit down and talked. I told her that things were pretty hot around here. I knew he was a known heroin dealer—

Mr. Dunbar: I object to that and move it be stricken. It's entirely an unvoluntary statement. It was not a response that I could have anticipated, and, therefore, move to therefore attempt to prevent the matter from coming in.

The Court: Sustained. It may go out and the jury is directed to disregard that portion of the statement that Mr. Dunbar has objected to.

Mr. Dunbar: I also move for a mistrial.

The trial court then heard both attorneys out of the jury's presence. Mr. Dunbar urged that the court's admonition did not eliminate the effect of the witness' statement upon an important issue ("I knew he was a known heroin dealer—"). The prosecutor asserted, "I did not know this type of response was going to be forthcoming, but the same token, I think the jury was admonished they have—it's assumed they will follow the instructions of the court, and will put this out of their mind." The court overruled the motion for mistrial.

Defendant and his wife testified for the defense. Defendant denied knowledge of the gold box and its contents. Both admitted defendant possessed heroin on previous occasions. Defendant testified he was a heroin user at the time of the events but that he had used methadone for about a month prior to trial.

Defendant's principal defense on the facts was that the State failed to prove he was in possession of the heroin. The jury found defendant guilty as charged, the court sentenced him, and he appealed.

Defendant urges two basic contentions in this appeal: (1) the trial court should not have admitted the physical evidence, as it was illegally obtained, and (2) the trial court should have ordered a mistrial after Mrs. Franklin's voluntary statement.

I. *Physical Evidence*. Defendant contends the officers illegally seized the physical evidence and the trial court should not have overruled his motion to suppress. Defendant's difficulty at the threshold of this contention is that under the record we do not have anything to review. The trial court overruled the motion to suppress, to be sure, but overruling a motion to suppress does not itself ordinarily constitute a basis for error; the basis for error occurs when the evidence in question is offered at trial, the defendant objects, and the objection is erroneously overruled. State v. Salazar, 213 N.W.2d 490 (Iowa). An exception exists in situations such as the one in State v. Evans, 193 N.W.2d 515 (Iowa). If during reception of evidence at trial, the jury is excused so that the defendant can make an objection out of the jury's presence, in order to avoid prejudice, he need not repeat his objection when the jury is called back in, and this is true although his objection outside the jury's presence is in the form of a motion to suppress. Such is the holding in State v. Evans, supra.

We do not have an Evans situation here. Defendant's motion was urged, heard, and ruled on before reception of evidence on trial commenced. After the motion was overruled, reception of evidence began, and considerably later during the trial the physical evidence was produced, identified, and offered. This situation comes within the general rule illustrated by State v. Koch, 214 N.W.2d 202 (Iowa); State v. Salazar, 213 N.W.2d 490 (Iowa); and State v. Hinsey, 200 N.W.2d 810 (Iowa). To preserve error, defendant had to object to the physical evidence when it was offered in evidence, as in the usual case. He failed to do so, except for an objection to exhibit B which is not now relied on. We have nothing to review on this aspect of the case.

II. *Mrs. Franklin's Statement*. Trial courts have considerable discretion in ruling upon motions for mistrial, as they are present throughout the trial and are in a better position than we to gauge the effect on the jury of the matter in question. State v. Fox, 257 Iowa 174, 131 N.W.2d 684. We have also said that "ordinarily the striking of improper testimony cures any error." State v. Peterson, 189 N.W.2d 891, 896 (Iowa). Illustrative cases are State v. Heisdorffer, 164 N.W.2d 173 (Iowa); State v. Roberts, 255 Iowa 166, 121 N.W.2d 513; State v. Tornquist, 254 Iowa 1135, 120 N.W.2d 483; State v. Olson, 249 Iowa 536, 86 N.W.2d 214; State v. Miskell, 247 Iowa 678, 73 N.W.2d 36; State v. Bolds, 244 Iowa 278, 55 N.W.2d 534; State v. Warren, 242 Iowa 1176, 47 N.W.2d 221.

Defendant quotes language which we recently used in State v. Wright, 203 N.W.2d 247, 251 (Iowa). That case, however, involved irrelevant, inflammatory evidence brought forward by the prosecutor himself no less than six times, five of which were after the trial court sustained objections and three of which were after the defendant made a motion for mistrial. We have no such situation here.

We have carefully examined the entire record in the light of Mrs. Franklin's statement and the trial court's prompt ruling and admonition to the jury. We are unwilling to interfere with the trial court's exercise of discretion in denying the motion for mistrial under the circumstances here.

The verdict and sentence should stand.

Affirmed.

MOORE, C. J., and LeGRAND, REES and HARRIS, JJ., concur.

McCORMICK, MASON, RAWLINGS and REYNOLDSON, JJ., dissent.

McCORMICK, Justice (dissenting).

I respectfully dissent from Division II and the result because I believe trial court

erred in overruling defendant's motion for mistrial.

The exceptional cases where the striking of improper testimony is not adequate to avoid prejudice include situations where the prejudice inherent in the testimony is so great it is unreasonable to believe the jury would disregard the objectionable matter despite an instruction to do so. State v. Ware, 205 N.W.2d 700, 705 (Iowa 1973). Those situations may arise, as in the present case, through the fault of no one. This contrasts with situations where prejudice occurs through prosecutorial persistence. State v. Jensen, 216 N.W.2d 369, 374 (Iowa 1974); State v. Wright, 203 N.W.2d 247 (Iowa 1972).

Here the witness blurted out that she knew defendant "was a known heroin dealer." Defendant was on trial for possession of heroin with intent to deliver. This is equivalent to a witness saying in a murder prosecution that the defendant is a "known murderer" or in a larceny prosecution that the defendant is a "known thief." Such statements are calculated to encourage conviction of a defendant because of bad character rather than proof he committed the offense charged. Character and reputation evidence can be introduced by the State under well-defined limitations only after a defendant puts his character in issue in a case. State v. Osborne, 200 N.W.2d 798, 808 (Iowa 1972); State v. Hobbs, 172 N.W.2d 268, 271 (Iowa 1969). "A defendant must be convicted only if it is proved he committed the offense charged and not because he is a bad man." State v. Wright, supra, 203 N.W.2d at 250.

I do not know why the trial judge can be said to have a vantage point superior to ours by which to gauge the effect of objectionable matter on a jury. The issue of prejudice must be evaluated objectively by examination of the improper testimony, not subjectively by attempting to psychoanalyze the jury. Trial court discretion operates within limits. "It must be utilized fairly and impartially, not arbitrarily, by application of relevant * * * principles to all known or readily available facts of a given issue or cause to the end that justice may more nearly be effectuated." State v. Vickroy, 205 N.W.2d 748, 751 (Iowa 1973); see generally K. Dunahoo, The Scope of Judicial Discretion in the Iowa Criminal Law Process, 58 Iowa L.Rev. 1023.

The improper testimony in the present case was inherently prejudicial, and I believe the prejudice was so great we cannot reasonably say it was dissipated by the trial judge's request that the jury disregard the statement. To say otherwise is to deny as judges what we know as human beings.

I would reverse.

MASON, RAWLINGS, and REYNOLDSON, JJ., join in this dissent.